(No. 12090.—Reversed in part and remanded.)

THE PEOPLE *ex rel.* C. L. Burton *et al.* Appellees, *vs.* THE CORN PRODUCTS REFINING COMPANY, Appellant.

*Opinion filed December 18, 1918—Rehearing denied Feb. 5, 1919.*

1. MUNICIPAL CORPORATIONS—*statutory power and duty in regard to streets.* Under the statute municipal corporations have power to open, alter or vacate streets and alleys and to regulate their use, but they are likewise charged with the duty to prevent and remove encroachments or obstructions therein.

2. SAME—*recital that ordinance was passed for benefit of city is not conclusive.* A recital in an ordinance for vacating a street or permitting the erection of an obstruction therein, to the effect that it is passed for the benefit of the city, is not conclusive upon the courts, and while the courts will not inquire into the motives of the city council they may hear oral testimony as to the purpose of the ordinance and determine whether it is public or private.

3. SAME—*city cannot allow use of streets or parts thereof for private purposes.* The right of the public in the streets of a city is not limited to the use of the surface of the streets, and a city is without power to authorize a manufacturing plant having buildings on both sides of a street to erect a permanent overhead bridge from one building to another across the street nor to vacate the street for the use and benefit of the company.

APPEAL from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

BURROUGHS & RYDER, MORGAN LEMASTERS, and JAMES M. SHEEAN, for appellant.

JOSEPH P. STREUBER, State's Attorney, E. G. HILL, and T. T. HINDE, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a petition for *mandamus* filed by the People, on the relation of C. L. Burton and others, in the circuit court of Madison county, against the Corn Products Refining Company and the mayor and aldermen of the city of Granite City, for the purpose of compelling them to remove cer-

tain alleged obstructions from that portion of Nineteenth street, in said city, extending through and between certain land of the Corn Products Refining Company, which street had been obstructed and later closed by virtue of certain ordinances of said city known as No. 195, authorizing the building of an overhead bridge, and No. 301, vacating said street. A hearing was had on the petition, answer and replication before the court without a jury. After such hearing and the submission of certain propositions of law by both parties the court entered judgment for petitioners as to ordinance No. 301, holding the same void and directing the writ to issue against defendants, directing them to re-open said street, but denying the relief as to the other matters under ordinance No. 195. Motions for new trial and in arrest of judgment were overruled and the Corn Products Refining Company brings the cause to this court by appeal on the ground that the validity of a municipal ordinance is involved, the trial court having certified that the public interest so required.

The appellant owns a tract of land upon which its plant is constructed, in all amounting to about thirty acres. It is in two parcels adjacent to either side of Nineteenth street. As its plant was enlarged new buildings were erected on either side and adjacent to Nineteenth street. The appellant, in writing, petitioned the mayor and aldermen of the city of Granite City to pass ordinance No. 195. Said ordinance in its preamble refers to the petition in the following language: "Whereas, Corn Products Refining Company, by a petition dated the 21st day of May, A. D. 1907, and presented to the city council at its meeting of May 27, A. D. 1907, has requested that the said city authorize and permit it to construct, at its own cost, a bridge over and across Nineteenth street, in said city, connecting the syrup house of said company with its can factory to be erected on the opposite side of said street, and extend gas, steam and water pipes and electric wires over and

across said street, said petitioner obligating itself to certain liabilities in said petition; and whereas it is deemed advisable and beneficial to said city and those concerned to comply with the spirit of said petition," etc. The ordinance was passed and approved at the special instance and request of appellant on June 4, 1907, and by it accepted on July 1, 1907. Section 1 reads as follows: "That the authority, right and privilege be and the same are hereby given to Corn Products Refining Company to construct and maintain, at its own cost, a bridge over and across Nineteenth street, in said city, connecting what is known as the syrup house of said company with its can factory to be erected on the opposite side of Nineteenth street, in said city, and to extend gas, steam and water pipes and electric wires across the aforesaid street." The structure or bridge was built and is one of the obstructions complained of and sought to be removed by this petition.

Again, on June 11, 1912, the Corn Products Refining Company presented to the mayor and aldermen of Granite City another petition, in which it set forth that it is the owner of said thirty-acre tract and petitions the mayor and aldermen to vacate that portion of Nineteenth street being within the limits of its property, "for the reason that the enlargement of our plant necessitates the vacation of that part of said street, and for the further reason that the best interest of the city of Granite City and the inhabitants thereof will be subserved thereby." On the same day J. Masserang, an alderman and chairman of the ordinance committee, presented to said committee a certain ordinance known as ordinance No. 301 for its consideration, and asked the other members of said committee to join with him in a written recommendation to the council that said ordinance do pass. The other members of the committee refused to join in the recommendation, and thereupon, on the same day, Masserang submitted the said ordinance with a recommendation that it pass, signed by

himself. On that day the council acted on this report as a minority report. After the reading of the ordinance it was on special motion duly carried, placed upon final passage and passed as read. The mayor vetoed the ordinance, and it was subsequently by the necessary vote passed over his veto on June 18, 1912, and is in the following language:

"Whereas, Corn Products Refining Company has petitioned the city council of the city of Granite City, Illinois, to vacate that portion of Nineteenth street which extends from the westerly side of the right of way used by the Chicago, Peoria and St. Louis railway to the southwesterly side of Twentieth street, in McCasland & Youree's subdivision of the Wulfemeyer tract, in the city of Granite City, Illinois; and whereas it is deemed to be to the best interest of the city of Granite City and the inhabitants thereof, and to all persons affected thereby, that that part of Nineteenth street be vacated; therefore

*"Be it ordained by the city council of the city of Granite City, Illinois:*

"Section 1. That that portion of Nineteenth street being within the limits of the property of the Corn Products Refining Company and extending in a northerly direction from the westerly side of the right of way used by the Chicago, Peoria and St. Louis railway to the southerly side of Twentieth street, in McCasland & Youree's subdivision of the Wulfemeyer tract, in the city of Granite City, Illinois, be and the same is hereby declared vacated.

"Sec. 2. That that vacation of said portion of Nineteenth street is made subject to the rights, uses and interest of the City Water Company of East St. Louis and Granite City in said street, and the Corn Products Refining Company shall save and indemnify the city of Granite City from any and all damages caused from the vacating of said street.

"Sec. 3. All ordinances or part of ordinances in conflict with this ordinance are hereby declared repealed.

"Sec. 4. This ordinance shall be in full force and effect from and after its passage and approval."

Soon after the passage and approval of this ordinance the appellant fenced that portion of Nineteenth street and has since excluded the public from the same, except that it has recognized the rights reserved in said ordinance. This obstruction is complained of and sought to be removed by this proceeding.

At the time of the passage and approval of each of said ordinances there was in force and effect an ordinance making it illegal to place any building, fence or other obstruction upon any of the streets of said city and providing a penalty for the same. That ordinance was introduced in evidence by stipulation. Notice was served on the city and the appellant prior to the filing of the petition for *mandamus* herein, requiring them to remove all obstructions and open said street.

The circuit court, in effect, held ordinance No. 301 void and directed that a writ issue requiring the removal of the obstructions from Nineteenth street, except a certain overhead structure authorized by ordinance No. 195, and refused to hold ordinance No. 195 void.

It is contended by the appellant that the judgment is an illegal interference with the exercise of the discretionary and legislative authority vested in cities and villages to vacate streets; that authority to vacate streets is lodged exclusively with the city council; that ordinance No. 301 was legally passed; and that incompetent parol evidence was admitted, over appellant's objections, to prove the purpose of ordinance No. 301 to be for the private use of appellant. Cross-errors are assigned and argued by appellees that the trial court erred in excepting from the judgment a certain overhead structure authorized by ordinance No. 195 and in refusing to hold said ordinance void.

The questions to be decided here are as to the validity of the two ordinances, No. 195 and No. 301. The validity

of these ordinances depends upon whether or not the city council had power to pass them. If it had such power they are valid even though they may have been unwise, as courts have no power to review acts of the legislative department which involve only the question of motives actuating the exercise of legislative discretion, except in cases where there is such an abuse of that discretion that it may be said to be no exercise of discretion at all. *People* v. *Carlock,* 198 Ill. 150.

Did the city council in this case have power to pass ordinance No. 195, permitting appellants to build an overhead bridge across the street in question? If it did not have that power then the question is not one of legislative discretion or motive in the exercise thereof, as there can be no exercise of discretion when there is no power to act at all.

Cities are vested with power to lay out, establish, open, alter and vacate streets and to regulate the use of the same. (Hurd's Stat. 1917, sec. 1, par. 7, p. 320.) They are likewise vested, by paragraph 10 of said section, with the power, and it is their duty, to prevent and remove encroachments or obstructions on the same. It has been the law of this State by statute since 1845, that "to obstruct or encroach upon public highways, private ways, streets, alleys, commons," etc., shall constitute a public nuisance. At the time the overhead bridge in question was built and at the time the city council passed the ordinance authorizing the building thereof Nineteenth street was a public street in the city of Granite City, and the question is presented, does this overhead bridge "obstruct or encroach upon" the street in question so as to constitute a public nuisance, and if it is such a nuisance can the city council by ordinance authorize the maintenance of such nuisance by citizens for private use? That the purpose of building said bridge was for private use there can be no doubt. It is admitted that the appellant owns, controls and devotes to its exclusive use the

property on both sides of this street at the point where said bridge was built. The ordinance sets out that said bridge is to connect the building of appellant known as "the syrup house" with "its can factory." The ordinance was passed, as the ordinance itself indicates, at the special instance and request of appellant. The mere fact that the ordinance recites that "it is deemed advisable and beneficial to said city and those concerned" to permit the building of the bridge is by no means conclusive on the question as to whether or not the ordinance gives over a public street for private use. The law will look to the substance and not the form used. The city council will not be permitted to do indirectly what it cannot do directly. The substance is not to be lost sight of in the mere use of words. (*People v. Atchison, Topeka and Santa Fe Railway Co.* 217 Ill. 594; *Ligare v. City of Chicago,* 139 id. 46.) It is evident from the matters set out in the ordinance and its preamble that this bridge was not to be built for public use but solely for the private use of appellant, and the mere recital that it is deemed to be for the benefit of the public, where the ordinance itself shows it is not, will not aid in the contention that the city council, by the passage of such ordinance, acted in the interest of the public or that the purpose of said ordinance was a public purpose.

The power of a city council to by ordinance authorize the use of public streets or parts thereof for private purposes has been uniformly denied by this court. The rule is well settled that when a public street is once established all the beneficial uses vest in and devolve upon the public. These uses include the uninterrupted, unimpeded and unobstructed use of every portion and part of such public highway,—not only that they may use all the ground for foundation to travel upon, but that they may likewise enjoy the uses of the air above and the ground beneath the surface. (*People v. Harris,* 203 Ill. 272.) In *Hibbard & Co. v. City of Chicago,* 173 Ill. 91, this court said: "The right

of the public to the exclusive use of the streets for public purposes is inconsistent with the right of a private citizen to encroach thereon by the erection of a permanent structure. The streets are held in trust by the municipality, and this fact prevents the municipality from authorizing any encroachment on or obstruction of them by such structures." In the case of *Reiner's Appeal*, 100 Pa. St. 182, cited with approval in *People* v. *Harris, supra,* where a bay-window in the second story of a city house, sixteen feet above the sidewalk, was so constructed as to extend three and one-half feet into the street, such bay-window was held a public nuisance, which could not be justified or authorized by ordinance. This rule was followed in *Field* v. *Barling,* 149 Ill. 556, *Pennsylvania Co.* v. *City of Chicago,* 181 id. 289, *People* v. *Atchison, Topeka and Santa Fe Railway Co. supra, Chicago Cold Storage Co.* v. *People,* 224 Ill. 287, *Snyder* v. *City of Mt. Pulaski,* 176 id. 397, and numerous other cases. In the instant case the bridge in question was an obstruction to the free use of the street by the public and therefore a public nuisance, and the city council of the city of Granite City was without power to authorize its construction, and the circuit court erred in denying the writ of *mandamus* requiring its removal.

But it is contended that the city council of Granite City, before the filing of the petition herein, passed an ordinance vacating Nineteenth street, the inference being that the street having been vacated the public no longer had any interest in it that would enable them to maintain *mandamus* proceedings for the removal of the bridge. Regardless of the validity of the ordinance to vacate said street no attempt had been made to do so at the time of the passage of ordinance No. 195, and the city had no power to pass said last named ordinance.

Is ordinance No. 301, vacating this street, a lawful exercise of legislative authority? Appellant contends that it is; that the power to vacate streets lies exclusively in the

discretion of the city council and that courts of law have no power to review the exercise of such legislative discretion, and that the motives of the city council in passing the ordinance cannot be shown by parol evidence. Appellant bases its contention largely on the case of *City of Amboy* v. *Illinois Central Railroad Co.* 236 Ill. 236, and cases there cited, which hold that it is improper to receive parol evidence of matters outside the ordinance, or some document connected therewith, which merely goes to the motive which actuated the city council in passing an ordinance. That is the established rule in this State. Courts may not inquire into the motives which move a legislative body in the exercise of its legislative discretion but such motives are presumed to be patriotic. (*People* v. *Thompson,* 155 Ill. 451, and cases there cited.) Courts may, however, and it is their duty to, inquire and determine whether or not the act of the legislative body lies within such legislative discretion, and in so doing they may, and should, inquire whether or not the purpose for which such legislative discretion is exercised,—that is, the purpose of the ordinance passed,—is one which lies within the power of the legislative body to carry out. Thus, in an ordinance vacating a street, while it is not competent to inquire into the motives of the city council in passing the same it is within judicial power and duty to inquire into the purpose of such ordinance, and in doing so to determine whether its purpose is to serve a public benefit or a private use. The former purpose is a valid one while the latter is *ultra vires.* We know of no rule limiting an inquiry into the purpose of an ordinance to such evidence as appears in the ordinance or the petition, only, and can see no good reason for such a rule. An ordinance to vacate a street may be presented and passed without a petition being filed and contain no reference to a petition or to a private interest therein but may, in fact, serve a private purpose, only, and while such ordinance is presumed to have been passed with honest and patriotic

motives, and while the city council may have considered the purpose a public rather than a private one, yet if, as a matter of fact, the purpose of such ordinance is purely private that purpose is illegal and the ordinance is void as beyond the legislative power of the city council to enact; and this is true regardless of whether or not the city council considered the purpose of such an ordinance a lawful one. It follows that it may become necessary to look beyond the ordinance and examine its results and the surrounding circumstances in order to determine whether or not its purpose is public, and therefore within the scope of legislative discretion, or private, and therefore without such scope. To hold otherwise would be to subject the public to the loss of its streets through an ordinance, by merely avoiding in such ordinance, or the record connected therewith, any disclosure of its real purpose. Such should not be the law. That parol testimony may be received to show the purposes of such an ordinance has been recognized in this State. In the case of *Chicago, Rock Island and Pacific Railway Co.* v. *People,* 222 Ill. 427, parol testimony was received to show the purpose of a certain ordinance passed by the city of Peoria permitting the use of Water street, in said city, by the appellant railway company, by showing the use to which appellant was putting the street, with the surrounding circumstances, and the court said on page 440: "In either event we conclude that the uses and purposes, as shown by this record, that are being made or can be made of a portion, at least, of the disputed premises under the ordinance, whether said premises be held to be a public street or a public landing, are of such a nature that the ordinance grants to certain parties the exclusive use of land which belongs to and ought to be open and free to the enjoyment of the public, and that such uses therefore constituted a purpresture and the city council of Peoria had no authority to pass the ordinance in question. It must therefore be held void and of no effect." The court in the case

at bar did not err in receiving parol testimony of the purpose of said ordinance.

There is a broad distinction to be drawn between the motives that may actuate members of a city council in passing an ordinance and the purpose of such ordinance. Thus, in *Ligare* v. *City of Chicago, supra,* where the city council passed certain ordinances to condemn certain property to widen a street, it appearing that the purpose of these ordinances was to allow certain railroad companies to have track privileges on the street, this court said on page 64: "We do not deny that the city has power to widen streets, generally, and that when it has undertaken to do so the motives that may have actuated those in authority are not the subject of judicial investigation; but the purpose for which a thing is done is very different from the motives which may have actuated those by whom it is done, and is in the present instance a legitimate subject of judicial investigation, for the right to exercise the power of eminent domain is in all cases limited by the purpose for which it shall be exercised, as thus private property may be condemned for public use, but it may be shown that the use, in fact, is not public but private." To the same effect is *Corcoran* v. *Chicago, Madison and Northern Railroad Co.* 149 Ill. 291.

In the case of *Smith* v. *McDowell,* 148 Ill. 51, where an injunction was sought to restrain the construction of an areaway and stairway in the village of Chatsworth in pursuance of an ordinance passed for that purpose, this court said: "The important question presented by this record is whether, under the statute giving municipal corporations control of the streets and alleys within the municipality, power exists in the corporate authorities to vacate a street, or a portion of a street, for the benefit and use of a private person. It is charged, and the answer practically admits, and, indeed, the ordinance on its face purports, that the

attempted vacation of a strip five feet wide and eighty-five feet long off of the side of the street was for the single purpose of permitting its use by appellant Smith, president of the board of trustees of the village, as an areaway connected with the basement of his proposed building. The doctrine is sought to be invoked that the motives of the trustees of the village in the passage of the ordinance can not be judicially inquired into. That position is at once conceded. Whether their motives were honest or otherwise in voting for the ordinance is not a subject of inquiry. But the purpose accomplished by the ordinance—the object attained—may always be considered, indeed must be, in determining the validity of the ordinance. If the purpose effected by the ordinance is within the power of the city council their act will be valid. The question to be determined is one of power in the municipality, in the determination of which the legal effect of the action of the municipality becomes the controlling matter for consideration." Continuing, this court said: "It does not follow, however, as seems to be supposed, that by the use of the general words 'and vacate the same,' the absolute power of the legislature was intended to be conferred upon the municipal authorities. The grant of power in this particular is to be construed in view of the purposes for which the municipality is invested with the control of its streets, alleys and public grounds. The municipality, in respect of its streets, is a trustee for the general public and holds them for the use to which they are dedicated. The fundamental idea of a street is, not only that it is public, but that it is public in all its parts, for free and unobstructed passage thereon by all persons desiring to use it." And again on page 65 this court said: "It is not necessary to here discuss or determine whether the courts will in any case interfere to prevent the abuse of municipal discretion in the respect mentioned, for the reason that it is not sought to restrain

the exercise of such discretion but to prevent the perversion of their power to the promotion of private interests, in violation of the trust upon which the streets are held."

It is well settled by frequent decisions of this court that a municipality holds its streets and alleys in trust for the benefit of the public and cannot lawfully authorize the vacation or obstruction of any of them for the use and benefit of private corporations or individuals. *People* v. *Atchison, Topeka and Santa Fe Railway Co. supra; Chicago, Rock Island and Pacific Railway Co.* v. *People, supra; Chicago Cold Storage Co.* v. *People, supra; People* v. *Clean Street Co.* 225 Ill. 470; *DeLand* v. *Dixon Power Co.* 225 id. 212.

The purpose of ordinance No. 301 is shown by the petition and ordinance, without the aid of parol evidence, to be a private one for the benefit of appellant. This is further established by the evidence showing that appellant fenced said street across both ends. There is no evidence of benefit to the public by its vacation. The city council was without power to pass this ordinance and it is therefore void. The circuit court did not err in awarding a writ of *mandamus* directing that the street be re-opened and the fences removed therefrom.

For error in refusing to award the writ of *mandamus* directing the defendants in said suit to remove the overhead bridge the cross-errors are sustained and the judgment will be reversed as to that part, with directions to the circuit court to issue a writ of *mandamus* against the appellant in this suit directing it to remove the overhead bridge in question. In all other respects the judgment will be affirmed.

*Reversed in part and remanded, with directions.*