(No. 21458.— )

THE PEOPLE *ex rel.* James Lapice, Appellee, *vs.* LOUIS WOLPER *et al.* Appellants.

*Opinion filed October 22, 1932—Rehearing denied Dec. 9, 1932.*

HEARD, C. J., and ORR and JONES, JJ., dissenting.

WILLIAM H. SEXTON, Corporation Counsel, and BERNARD N. WOLPER, (MARTIN H. FOSS, and FRANCIS J. BENDA, of counsel,) for appellants.

BARRETT, BARRETT & WERMUTH, (WILLIAM C. WERMUTH, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county awarding a writ of *mandamus* requiring removal of two curb gasoline pumps and supporting cement base, maintained by appellant Harold Wolper in the parkway of West Lake street, in the city of Chicago. The petition was filed by the People on relation of James Lapice, a citizen and resident of the city of Chicago. It alleges that the gasoline pumps are maintained by Wolper for private gain, and that they, with the cement base, constitute an unlawful obstruction upon the public street. The city of Chicago and certain of its officials are also defendants. Answer was filed, alleging power in the city to exercise exclusive control over its streets, denying that the pumps and base constitute an unreasonable interference with the free use of the street, and averring that such use is a reasonable one and constitutes a convenience to the public and does not interfere materially with the rights of the public to the use of the entire street. It is alleged in the answer that traffic over West Lake street is largely by automobiles and trucks propelled by gasoline engines and that the use of curb pumps provides an efficient and ready means of furnishing gasoline to such automobiles and trucks, thus eliminating the necessity of driving them over sidewalks to reach gasoline stations. The answer also sets out the provisions of an ordinance passed by the city of Chicago authorizing the installation of curb gasoline pumps, licensing the same and regulating their operation. The ordinance provides for rigid control over the use of such pumps, and declares that they shall not be permanently maintained but by permit for a definite period of time, only, which permit is subject to revocation by the mayor for any cause. A

hearing, with stipulation of facts, resulted in the judgment complained of.

Appellant Louis Wolper is the owner of certain premises known as 5665-67 West Lake street, on which appellant Harold Wolper operates a garage. He has for nine years maintained, and was at the time of the filing of the petition herein maintaining and operating, two curb pumps securely fastened upon a cement base located in the parkway space in front of his garage on the south side of West Lake street. The base is fifteen feet long and two and one-half feet wide and is five inches in height on the street side and three inches in height on the sidewalk. The street at that point is forty-seven feet in width, including a parkway space on the south side twelve feet in width between the lot line and the south curb line. This space is occupied by a six-foot cement sidewalk adjacent to the lot line and a six-foot parkway in which the pumps involved here are maintained. The parkway space in front of Wolper's premises is paved with cement laid by the property owner at his expense. There are no parking restrictions for vehicles on this portion of West Lake street, and the traffic consists chiefly of automobiles and trucks propelled by gasoline engines. Gasoline is sold by Wolper to such as desire to purchase it, who park their vehicles at the curb line opposite the gasoline pumps. By means of these pumps gasoline is forced from tanks lying underground in the parkway into the tanks of the vehicles. The ordinance providing for the issuance of permits for the construction and maintenance of gasoline pumps of the kind here involved requires the approval of the site by the fire prevention bureau, payment of certain fees, consent of property owners, limitation as to location with reference to schools, churches, hospitals or other named structures, and provides for the issuance of a permit limited to one year, subject to revocation by the mayor. A bond is required of the operator of the gasoline pumps.

The principal question in the case is whether the ordinance permitting the installation and operation of gasoline pumps of the character here under consideration is valid. The circuit court held the ordinance invalid and that the pumps and base constitute an obstruction of the street and ordered that the writ issue. The cause comes here on direct appeal, the court having certified that the validity of an ordinance is involved and that the public interest requires that the cause be reviewed by this court.

Appellants argue that the city of Chicago has under the Cities and Villages act authority to permit the maintenance and operation of so-called pumps in the parkways of the public streets. It is not contended that express authority is given by statute but that such authority is derived from a combination of the grants of power by the legislature. Numerous provisions of article 5 of the Cities and Villages act are cited as showing the existence of such power in the city council. They are: Section 4, granting power to issue and revoke licenses and fix the terms thereof; section 7, to lay out, open, alter and improve streets; section 8, to plant trees upon the same; section 9, to regulate the use of the streets; section 10, to prevent and remove encroachments or obstructions upon the same; section 11, to provide for lighting the streets; section 14, to regulate the use of sidewalks and structures thereunder; section 19, to regulate and prevent flying of flags and banners across the street; section 20, to regulate traffic and sales upon the streets, sidewalks and public places; section 65, to regulate and prevent storage of petroleum or products thereof; section 66, to regulate the police of the city; section 75, to declare what shall be a nuisance and abate the same; section 82, to regulate the construction of garages; section 93, regulate and prohibit keeping of combustible material within the fire limits of the city; section 99, to regulate the use of space over streets and alleys of the city; and section 102, to pass all ordinances and regulations proper or necessary

to carry into effect the powers granted. It is argued that from these sections of the statute there necessarily arises the implication of power to permit the maintenance and use of so-called curb gasoline pumps.

It has been many times said by this and other courts that municipal corporations are creatures of the legislature, possessing no inherent powers but deriving all power from the enactments of the General Assembly. Their power to legislate and the subject matter of their legislation are limited by statutory enactments. Statutes granting such power are to be strictly construed against the power granted, and any fair, reasonable doubt of the extension of an asserted power is resolved against the municipality. While the authority for the passage of an ordinance need not be wholly derived from a single grant of power by the legislature but may be derived from one or any combination of such grants, (*City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597; *City of Rockford* v. *Nolan,* 316 id. 60; *Arms* v. *City of Chicago,* 314 id. 316;) yet implied powers of a city are those, only, which are necessarily incident to powers expressly granted. (*Crerar Clinch Coal Co.* v. *City of Chicago,* 341 Ill. 471; *City of Chicago* v. *Northern Paper Stock Co.* 337 id. 194.) A statute of this State, since the first enactment on the subject in 1845, has declared obstructions or encroachments upon public highways, private ways, streets, alleys, commons, landing places and ways to burying places to be public nuisances, (Smith's Stat. 1931, chap. 38, sec. 222, par. 5,) and, as we have seen, by section 10 of article 5 of the Cities and Villages act there is imposed upon the city the duty to prevent and remove encroachments and obstructions from the public streets.

With these statements of the general rules we come to the questions whether the pumps operated by Wolper constitute a purpresture and public nuisance within the meaning of the statute, and if so, whether the city may by ordinance

466

authorize the maintenance thereof. A permanent encroachment upon streets for private use is a purpresture and is in the law a nuisance. (*Hibbard & Co.* v. *City of Chicago,* 173 Ill. 91; *Driggs* v. *Phillips,* 103 N. Y. 77; *Smith* v. *State,* 23 N. J. L. 712.) Power of a city to authorize the use of public streets for private purposes has been uniformly denied by this court. When a public street is once established all beneficial uses vest in the public. These include the uninterrupted and unobstructed use of any portion or part of such public highway. These rights of the public are inconsistent with the right of a private citizen to encroach upon the streets by the erection of a permanent structure. Streets are held in trust by the municipality for the benefit of the public and may not be given away by ordinance. (*People* v. *Corn Products Co.* 286 Ill. 226; *Tolman* v. *City of Chicago,* 240 id. 268; *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 217 id. 594; *People* v. *Harris,* 203 id. 272; *Snyder* v. *City of Mt. Pulaski,* 176 id. 397.) Any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance *per se* and may be abated notwithstanding space is left for the passage of the public. If it were in each instance to be determined, as a question of fact only, how far such obstruction might encroach upon the highway without becoming a nuisance there would be no certainty in the law, as there would arise in each case the question of fact whether such obstruction was a hindrance to travel and to public use. If one may so obstruct a public highway then may also another, resulting in serious hindrance to the use of the street by the public. In the absence of clear legislative enactment the only safe way is to adhere to the rule as announced in the cases here cited. *People* v. *Harris, supra;* Elliott on Roads and Streets, p. 478.

Counsel for appellants cite in support of their argument, *McDonald* v. *English,* 85 Ill. 232, and *Pennsylvania Co.* v. *City of Chicago,* 181 id. 289. These cases were brought

by individuals and not by the People and fell under the rule that an individual may complain in such cases only of obstructions resulting in a special injury to him. That rule has been consistently followed in this State. *Hartshorn* v. *Bierbom,* 312 Ill. 275; *McPike* v. *Illinois Terminal Railroad Co.* 305 id. 298.

Counsel cite also *People* v. *Field & Co.* 266 Ill. 609, and *Rothschild & Co.* v. *City of Chicago,* 227 id. 205. The former involved a tunnel under a street which this court held to have a public use, in that anyone had a right to use it in going from one building to another, thereby lessening traffic congestion on the street. The latter case involved a platform forming a passageway from an elevated station to the second floor of the store building. This court found it to be for the use of the public, and an aid, rather than an obstruction, to the use of the street. Those cases are so to be distinguished from the case before us.

Counsel for appellants earnestly argue that since the permit to Wolper is revocable at the will of the mayor for any cause, the pumps and base do not constitute a permanent obstruction. It is true, the permits are revocable and run for a period of one year, but they are renewable, and once issued are revocable only for cause. It is a fair conclusion that a permit having once been issued will continue by renewal so long as the holder complies with the provisions of the ordinance, and the structure permitted will become, in fact, permanent. Under such facts these pumps cannot be said to come within the rule permitting merely temporary obstructions.

It is also argued that the great increase in the demand for gasoline and the convenience of obtaining it by driving to the curb, together with the fact that there is less danger of injury to pedestrians than in cases where the automobile must be driven across the sidewalk to the gasoline station, show a public interest in so maintaining these pumps. It can scarcely be argued that these gasoline pumps, and the

business of vending gasoline through them, constitute a use of the street either in a public or quasi-public capacity. Such use is clearly for the private gain of the owner of the pumps who dispenses gasoline. While everyone must recognize the great increase in the use of gasoline-propelled motor vehicles such increased use does not bear any of the elements of a public interest, and though it may well be said that such service is a convenience to a great many people using the public streets, it is equally clear that such convenience does not bring the operation of such pumps within the bounds of a public use but constitutes a non-essential and private use for the gain of the owner of the stand. It might be as well argued that because automobile drivers by stopping along the curb could purchase their daily supply of groceries without leaving their cars a grocery store could be conducted in the public highway.

Counsel argue that the obstructions are so insignificant in character as to cause them to fall outside the usual rule. These pumps are about twelve feet in height, and, as we have seen, the base is fifteen feet in length and two and one-half feet wide. Such can scarcely be said to be an insignificant obstruction. The legislature has neither expressly nor by necessary implication granted to the cities power to permit the erection and maintenance of gasoline pumps in the streets. The city does not possess the power to authorize them.

The ordinance is void, and the circuit court did not err in granting the writ. Its judgment is therefore affirmed.

*Judgment affirmed.*

HEARD, C. J., and ORR and JONES, JJ., dissenting.