(No. 2525—)

HARRY GOLDSON, DOING BUSINESS AS PLAZA THEATER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 9, 1937.*
*Rehearing denied May 12, 1937.*

WOLF & LOVE, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant is the owner of the Plaza Theatre located at 308-310 West North Avenue, in the City of Chicago.

In 1929 he constructed a canopy the full width of the theatre entrance, extending over the sidewalk from the front wall of the theatre building to a line perpendicular to the curb, which canopy had electrical signs on the exposed portions thereof with changeable letters, constructed to display, in electric lighting, the title of the motion picture, and the names of the stars appearing therein.

During the month of May, 1934 the Division of Highways of the Department of Public Works and Buildings of the respondent reconstructed and widened a portion of the roadway of said North Avenue, being S. B. I. Route 54, including the block in which the Plaza Theatre is located.

Such roadway was widened approximately five and one-half feet on each side of the street, and the sidewalk narrowed to the same extent. As a result thereof, the aforemen-

tioned canopy as then constructed, extended out over the curb into the roadway for a distance of approximately five feet.

The work of widening such roadway was completed on September 5th, 1934, and on September 15th, 1934 claimant received a notice from the City of Chicago requiring him either to tear down the canopy, or to so alter the same that it would not project into the street beyond the curb.

Claimant removed the old canopy and installed a new one, in accordance with the requirements of the Electrical Code of the City of Chicago, at a total cost of $3,340.00.

The canopy was originally constructed in 1929 pursuant to a permit issued by the City of Chicago in accordance with the Electrical Code of said city, which provides that no illuminated sign shall be erected or maintained over any sidewalk, street or public way except upon permit first issued by the Electrical Inspection Bureau, and further provides that such permit shall be for the period of one year, and that a renewal certificate must be obtained annually. Such Code further provides (Art. 3) that if, upon inspection, such sign is found to comply with the provisions of such article, a renewal certificate shall be issued for one year from the date of expiration of the previous certificate; and also, that no sign erected under the authority of such article shall project beyond the curb line, and that it shall be the duty of the Electrical Inspection Bureau to remove or cause the removal of any sign not in accordance with the provisions of such article.

In his original complaint claimant asked for damages in the total amount of $25,000.00, to wit, the cost of replacing the old canopy with a new one, and in addition thereto, damages on account of a reduction in the space in the electrical display signs which appeared on said canopy. Thereafter claimant waived all claim to damages except as to the amount paid for the construction of the new sign, to wit, $3,340.00.

The principles of law involved in this case have been before our Supreme Court many times, and the holdings of such court with reference thereto have been uniform. Consequently it will be necessary to refer to only a few of such decisions.

The case of *Snyder* vs. *City of Mt. Pulaski*, 176 Ill. 397, involved the right to use a well in the public streets of the

City of Mt. Pulaski, which right had been granted by said City to one Snyder by ordinance;—the well in question having been maintained in said street for a long time prior to the date of the adoption of such ordinance. In that case, in considering the validity of such ordinance, and the rights of Snyder thereunder, the court said:

"The streets of a city are dedicated for public use, and for these purposes the city council may improve and control them and adopt needful rules for their management and use. But that body has no power to alien or otherwise encumber such streets so long as they°are public streets, but must hold them in trust for public uses only, and hence no easement or right therein not of a public character can be granted by a municipality, or acquired by any individual or corporation for exclusive private use to the exclusion of the public. * * * A permanent encroachment upon public streets for a private use is a purpresture, and is in law a nuisance. * * * Such permission to so use the street is not binding upon the city, and is not irrevocable. The municipality having no power to grant such permanent use, there can be no estoppel against it from requiring the street to be open in its entirety, because no estoppel can arise from an act of the municipal authorities done without authority of law. * * * Appellant acquired no right * * * against the municipality by estoppel, nor by any right conferred by the ordinance, because the right conferred was a mere private use, and that private use created a purpresture."

In the case of *Pennsylvania Co.* vs. *City of Chicago*, 181 Ill. 289, the court, on page 296, said:

"The title of the streets is vested in the city, and it has the conservation, control, management and supervision of such trust property, and it is its duty to defend and protect the title to such trust estate. The city has no power or authority to grant the exclusive use of its streets to any private person, or for any private purposes, but must hold and control the possession exclusively for public use, for purposes of travel and the like. * * * The rule is, that all public highways, from side to side and from end to end, are held for the use of the public, and no other safe rule can be adopted."

The case of *Gerstley* vs. *Globe Wernicke Co.*, 340 Ill. 270, involved the question of the validity of an ordinance of the City of Chicago which authorized the construction of certain bridges across a public alley for the purpose of connecting several buildings of the defendant. One of the contentions of the defendant was that the ordinance in question was authorized by a statute which provides as follows, to wit: "The City Council may also regulate the use of space over the streets, alleys and public places of the city, and upon payment of proper compensation, to be fixed by ordinance, may permit use of the space more than twelve feet above the level thereof."

In that case the court held that the City of Chicago had no authority to enact the ordinance in question and that Globe Wernicke Co. acquired no rights by virtue thereof.

In the case of *People* vs. *Wolper,* 350 Ill. 461, the principles involved were identical with those involved in this case. In that case the defendant Harold Wolper had constructed and maintained for many years two curb pumps securely fastened upon a cement base located in the parkway space in front of his garage on the south side of West Lake Street in Chicago. The base was fifteen feet long and two and one-half feet wide, and five inches in height on the street side and three inches in height on the sidewalk. The street at that point is forty-seven feet in width. The south six feet thereof was occupied by a cement sidewalk adjacent to the lot line, and a six-foot parkway in which defendant's pumps were maintained, was between the sidewalk and the curb.

As in this case, the gasoline pumps were installed pursuant to a permit issued by the City of Chicago which was limited to one year, with renewal privilege as in this case. The question involved in the case was as to the validity of the ordinance authorizing and permitting the installation and operation of such gasoline pumps. The defendant urged that the City of Chicago had authority to adopt such ordinance and that such authority was derived from a combination of numerous grants of power in Article V of the Cities and Villages Act. In that case the court said:

"The authority for the passage of an ordinance need not be wholly derived from a single grant of power by the Legislature but may be derived from one or any combination of such grants. * * * Yet implied powers of a city are those, only, which are necessarily incident to powers expressly granted. * * * A statute of this State since the first enactment on the subject in 1845, has declared obstructions or encroachments upon public highways, private ways, streets, alleys, commons, landing places and ways to burying places to be public nuisances, * * * and, as we have seen, by Section 10 of Article 5 of the Cities and Villages Act there is imposed upon the city the duty to prevent and remove encroachments and obstructions from the public streets.

"With these statements of the general rules we come to the questions whether the pumps operated by Wolper constitute a purpresture and public nuisance within the meaning of the statute, and if so, whether the city may by ordinance authorize the maintenance thereof. A permanent encroachment upon streets for private use in a purpresture and is in the law a nuisance. * * *

"Power of a city to authorize the use of public streets for private purposes has been uniformly denied by this court. When a public street is

once established all beneficial uses vest in the public. These include the uninterrupted and unobstructed use of any portion or part of such public highway. These rights of the public are inconsistent with the right of a private citizen to encroach upon the streets by the erection of a permanent structure. Streets are held in trust by the municipality for the benefit of the public and may not be given away by ordinance.

\* \* \* \* \* \* \*

"Counsel for appellants earnestly argue that since the permit to Wolper is revocable at the will of the mayor for any cause, the pumps and base do not constitute a permanent obstruction. It is true, the permits are revocable and run for a period of one year, but they are renewable, and once issued are revocable only for cause. It is a fair conclusion that a permit having once been issued will continue by renewal so long as the holder complies with the provisions of the ordinance, and the structure permitted will become, in fact, permanent. Under such facts these pumps cannot be said to come within the rule permitting merely temporary obstructions."

\* \* \* \* \* \* \*

"The Legislature has neither expressly nor by necessary implication granted to the cities power to permit the erection and maintenance of gasoline pumps in the streets. The city does not possess the power to authorize them. The ordinance is void, and the circuit court did not err in granting the writ."

Claimant contends that his property has been taken or damaged by the respondent without just compensation, in violation of the constitutional provisions. Under the facts in the record, and the law applicable thereto, as above set forth, there is no basis for such contention. Claimant was chargeable with notice of the rights of the public in the street, and the right of the city under Article 5 of the General City and Village Act to open, alter, widen, or otherwise improve the same at any time, and was also chargeable with notice of the limitations on the power of the city with reference to such streets. Even if the Electrical Code was a valid enactment of the City of Chicago, claimant could not accept the benefits thereof without being bound by its obligations.

The original permit was issued September 20th, 1929. Under the Code, renewals were issued for one year from the date of expiration of the previous permit. The permit under which claimant was operating at the time of the widening of North Avenue therefore expired September 20th, 1934. The roadway in question was completed September 5th, 1934, and claimant was notified to remove or alter the sign on September 15th, 1934. Inasmuch as the sign projected over the curb on September 20th, 1934 (the date of the expiration of claimant's permit) in violation of the Electrical Code, he was not

then entitled to a renewal permit under the provisions of such Code and it was the duty of the Electrical Inspection Bureau to remove or cause the removal of such sign.

Viewed in the light most favorable to the claimant, he had no right, as against the public, to maintain a canopy which at any time extended over the curb line, and consequently even if he were required to remove the same within a short time after the erection thereof, he had no legal ground of complaint.

Under the facts in the record and the law applicable thereto, we have no authority to allow an award.

Award denied. Case dismissed.

OPINION ON REHEARING.

*Per Curiam:*

Claimant filed a petition for rehearing herein on March 10th, 1937.

We find nothing in such petition which was not fully and carefully considered by the court in arriving at its original decision, and the petition for rehearing will therefore be denied.