(No. 20500.—

THE CITY OF CHICAGO, Defendant in Error, *vs.* WILLIAM McKINLEY, Plaintiff in Error.

*Opinion filed April 23, 1931—Rehearing denied June 4, 1931.*

298

PAUL E. PRICE, and DENT, DOBYNS & FREEMAN, for plaintiff in error.

SAMUEL A. ETTELSON, Corporation Counsel, EDWARD C. HIGGINS, JOHN G. DRENNAN, and SAMUEL L. GOLAN, for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

William McKinley, the plaintiff in error, was found guilty in the municipal court of Chicago of a violation of section 3855 of the Chicago municipal code of 1922 by permitting an automobile to stand for a period of time longer than was necessary for the reasonably expeditious loading or unloading of passengers and for a greater length of time than three minutes, in front of 167 West Quincy street, within the area of restricted parking established by the ordinance. It was shown that he drove his car, a passenger sedan, in Quincy street and stopped at No. 175, between Wells and LaSalle streets, about 2:10 P. M. and went into

the building, leaving the car standing there until 2:40 P. M. The ordinance is in the following language:

"An Ordinance amending Section 3855 of the Chicago Municipal Code of 1922 as amended.

"Be it ordained by the city council of the city of Chicago, section 1. That section 3855 of the Chicago municipal code of 1922 as amended by ordinance entitled 'An ordinance amending section 3855 and repealing section 3856 of the Chicago municipal code of 1922,' passed December 14, 1927, be and the same is hereby amended to read as follows:

"3855. *Parking prohibited on certain streets during certain hours.*—On and after March 28, 1929, no person, firm or corporation owning, controlling, driving or operating any passenger vehicle shall cause or permit such vehicle to stand for a period of time longer than is necessary for the reasonably expeditious loading or unloading of passengers, provided such loading or unloading shall not consume more than three minutes; or to stand any commercial vehicle for a period of time longer than is necessary for the reasonably expeditious loading, unloading and delivery or pick-up of materials, provided such loading, unloading and delivery or pick-up shall not consume more than thirty minutes, on any public street or alley in the city of Chicago within the district bounded on the north by the south line of Wacker drive, on the east by the west line of Michigan boulevard, on the south by the south line of Harrison street, on the west by the east line of Market street, nor upon the upper level of Michigan avenue between the north line of Randolph street and the south line of Wacker drive, during the hours from 7:00 o'clock A. M. to 6:00 o'clock P. M. of any day except Sundays, New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, and except on Saturdays when the restriction within the above designated area shall be in force from 7:00 o'clock A. M. to 3:00 o'clock P. M.; provided that this section shall not apply to any duly licensed taxicab

when standing in any cab-stand fixed by ordinance; provided, further, that it shall not apply to any ambulance nor to any emergency vehicle of the city of Chicago, Federal government, the county of Cook, or to the vehicle of any public utility while the operator of any such vehicle is engaged in the necessary performance of emergency duties; and further provided, that this section shall not apply to any vehicle brought to a stop to avoid collision, or standing in compliance with the orders of any public officer or the direction of any traffic control signal. Any person, firm or corporation that shall violate or fail to comply with the provisions of this section shall be fined not less than $1 nor more than $25 for each offense."

The defense was that the ordinance is unreasonable and that it is void upon the ground that it is an amendment of a void ordinance.

As appears from the ordinance set out above, it is an amendment of section 3855 of the Chicago municipal code of 1922 as amended, which was the ordinance held unreasonable, and therefore invalid, in *Haggenjos* v. *City of Chicago,* 336 Ill. 573, the opinion in which was filed October 19, 1929. The ordinance which was the basis of the prosecution in that case provided that no person, firm or corporation owning, controlling, driving or operating any vehicle propelled either by animal or other power, shall cause or permit such vehicle to stand on any public street or alley in Chicago within the district and during the periods of time covered by the ordinance. The provision of the present ordinance, passed March 18, 1929, is, that no person, firm or corporation owning, controlling, driving or operating any passenger vehicle shall cause or permit such vehicle to stand for a period longer than is necessary for the reasonably expeditious loading or unloading of passengers, provided such loading or unloading shall not consume more than three minutes; or to stand any commercial vehicle for a period of time longer than necessary for the reason-

ably expeditious loading or unloading and delivery or pick-up of materials, provided such loading, unloading and delivery or pick-up shall not consume more than thirty minutes. The amending ordinance also contained a proviso not found in the former ordinance, that the "section shall not apply to any vehicle brought to a stop to avoid collision, or standing in compliance with the orders of any public officer or the direction of any traffic control signal." In all other respects, so far as this case is concerned, the ordinance is the same as that held invalid in the *Haggenjos case,* and the only question presented is whether the vice of the former ordinance is corrected by the substitution for the words of prohibition in it, "no person, firm or corporation owning, controlling, driving or operating any vehicle, propelled either by animal or other power, shall cause or permit any vehicle to stand on any public street or alley" within the boundaries and during the time stated in the ordinance, the words of prohibition in the amended ordinance that "no person, firm or corporation owning, controlling, driving or operating any passenger vehicle shall cause or permit such vehicle to stand for a period of time longer than is necessary for the reasonably expeditious loading or unloading of passengers, provided such loading or unloading shall not consume more than three minutes; or to stand any commercial vehicle for a period of time longer than is necessary for the reasonably expeditious loading, unloading and delivery or pick-up of materials, provided such loading, unloading and delivery or pick-up shall not consume more than thirty minutes." The territory covered by the two ordinances is the same and the hours are the same, except that 6:00 P. M. in the new ordinance is substituted for 6:30 P. M. in the old.

The violation of the ordinance occurred between Wells and LaSalle streets. The building of the Central Trust Company occupies the entire south side of Quincy street in that block. It is twenty-two stories high, and there is considerable traffic of patrons of the bank stopping there and

of Brinks express wagons taking money to and from the Federal Reserve Bank on the opposite side of the street. Big trucks also unload coal on the north side of the street. On the northwest corner of LaSalle and Quincy streets is the Federal Reserve Bank building, extending west on Quincy street about 100 feet, and immediately west of it is the Old Colony Life building, occupying the remainder of the block—about 200 feet. The Federal Reserve Bank building is occupied in part by the Federal Reserve Bank and on several of its floors are private offices. The Old Colony Life building has fifteen stories, the lower four occupied by the offices of the Old Colony Life Insurance Company and the upper eleven stories used for offices. The street is 45 feet wide. LaSalle and Wells streets where they intersect Quincy are busy streets. Wells is a through street, on which are both surface and elevated railway lines.

The plaintiff in error argues that an ordinance prohibiting all passenger vehicles from standing for any length of time except the time required to load or unload passengers, not exceeding three minutes, during an entire business day over an area of seventy-two city blocks, is unreasonable and void, and that this case is controlled by the *Haggenjos case* notwithstanding the amendments to the ordinance. The amendments were passed before the decision in the *Haggenjos case* was rendered, and could not, therefore, have been made with that decision in view. The first question presented in the brief is, therefore, whether the change made by the amendments of March 18, 1929, saves the amended ordinance from invalidity under the *Haggenjos case,* and the plaintiff in error insists that it does not; that to prohibit the standing of any vehicle for any purpose except for loading or unloading amounts substantially to total prohibition. It does amount to total prohibition of the use of the street for the parking or storage of vehicles. The argument of the plaintiff in error is that the amended ordinance prohibits standing for any purpose except as an incident

of traffic; that no person having any business in the loop can stop his automobile during any business day for any length of time for the transaction of business or for any purpose except as an incident of transportation; that he must keep traveling, and his only business must be that of traveling, and the question is asked, Is such an ordinance a reasonable exercise of power by the city? A negative answer to this question must be based upon the premise that persons using the street for personal transportation have a right to park their vehicles on the street for their convenience while they leave them for the transaction of business with the merchants, lawyers, stores, banks, hotels and the occupants of offices and buildings in the street.

It was held in *Tolman & Co.* v. *City of Chicago,* 240 Ill. 268, that the paramount right of the public to the use of the street in all its parts is the right of all persons to pass over it freely and without impediment whenever they have occasion to do so. But it is not an absolute right in every person at all times. It is subject to such incidental and temporary or partial obstruction as manifest necessity may require. The stopping of vehicles in the street for any temporary purpose interferes with the free use of the sidewalk or street by others, and the lawful use of the street by street cars and railroads interferes with such use by other vehicles and by foot passengers. The owners of lots bordering upon streets or ways have the right to make all proper and reasonable use of such part of the street for the convenience of their lots not inconsistent with the paramount right of the public to the use of the street in all its parts. The delivery of merchandise, fuel or other supplies at business and other houses on a street is a necessary incident to the use of a public highway. A merchant may use and temporarily obstruct the street and sidewalk in front of his premises for loading and unloading goods when not restrained by ordinance, if he does not unnecessarily or unreasonably interfere with their use by the traveling public.

The traveler on the street has no absolute right to leave his vehicle standing on the street while he goes into a neighboring building to transact business, whether the time occupied in the transaction of the business be long or short. If he does leave his vehicle for half an hour or half a day while he goes into an adjoining building to transact business, in the absence of municipal or statutory regulation the standing vehicle does not constitute a public nuisance as an obstruction of the highway. The primary use of a highway is for the purpose of permitting the passing and re-passing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose, under temporary exceptions as to deposits for building purposes, and to load and unload wagons, and receive and take away property for or in the interest of the owner of the adjoining premises. (*Cohen* v. *Mayor of New York,* 113 N. Y. 532.) We held in the *Haggenjos case* that the city had the power to regulate the use of the streets and the traffic upon them and to prevent the obstruction of them; that it was clear that some regulation of the standing of vehicles on the street was necessary for the safety, welfare and convenience of the public, and that it was the duty of the city council to determine what regulation was required for the public welfare, the only limitation upon the exercise of this power being that it should be reasonable. Because the ordinance in that case, amounting to a prohibition of standing vehicles on the street during the whole of every business day, was unreasonable, that ordinance was held to be invalid. The ordinance in question here is not subject to the same criticism. It allows stopping for the discharging and taking on of passengers not exceeding three minutes and for the loading and unloading of materials not exceeding thirty minutes.

No doubt it often would be convenient for a person to leave his car temporarily at the curb for such time as suits his convenience while he walks across the sidewalk to do

an errand, make a purchase, leave a message, make an appointment, telephone, or attend to some other business in his own or some other person's office, but if one person may do it so may every other person, and soon the curbs on both sides of the street might be lined with parked automobiles, the street crowded, traffic clogged and great inconvenience caused to all persons having occasion to use the street for its primary and legitimate purpose. There is no such right of individuals so to park their cars on the street which may not be regulated by ordinance. Parking may be regulated as to time when, place where and length of time permitted, due consideration being given to the necessities and convenience of those desiring to use the streets for going from one place to another and of those who desire to use them for the transportation, delivery and shipping of merchandise, materials, fuel and supplies and the character of the traffic affected.

This ordinance applies to seventy-two blocks, which include the loop district in the city of Chicago. The plaintiff in error contends that the extension of the ordinance over all this territory is unreasonable. The plaintiff in error testified that Quincy street was not a busy street, but the officer who was the only other witness in the case testified that beginning in the morning it was a very busy street until three o'clock in the afternoon. It is argued that while in certain streets or parts of streets in the loop no parking should be allowed at any time, in Quincy street between LaSalle and Wells, where there is practically no traffic at all during the business day, parking might very well be allowed at all times, and again at different times of the business day the same street may require or admit of different kinds of regulation. This argument is not based on the evidence, which does not show that there is practically no traffic during the business day on Quincy street between LaSalle and Wells. The city council had the right to regulate the use of the streets by ordinances, so as to prevent,

as far as possible, the loss and inconvenience arising from traffic congestion. It was for the council to determine what means should be adopted to remove the causes of such congestion, and its determination of such means cannot be disturbed unless the means adopted are unreasonable. It is the province of the council to decide in what streets or parts of streets, during what hours and for what length of time limitation of the right to park or allow a vehicle to remain standing on the street is necessary to a proper regulation of traffic, and we are not justified in holding those contained in the ordinance to be unreasonable unless they are clearly so, and in our judgment this cannot be said of them.

The plaintiff in error cites in support of his position *Ex parte Battis*, 40 Tex. Cr. 112, in which the ordinance there in question provided that any person owning or using any street carriage, hack or other vehicle for the purpose of conveying passengers, goods, wares or merchandise from one part of the city of Fort Worth to another for hire, who should stop, stand or detain any such carriage, hack or vehicle on certain streets or in front of any public hotel in the city except when actually engaged in receiving or delivering passengers, goods, wares or merchandise, should be deemed guilty of a misdemeanor and upon conviction fined. The court recognized the authority of the municipality to prevent the incumbering or obstructing of its streets, alleys and highways by vehicles, but held that the language of this ordinance prohibited the stopping of vehicles for any purpose outside of the exceptions mentioned and therefore was unreasonable and oppressive. Whatever may be said of the construction given to the language of the ordinance in that case, the language is different from that which is under consideration here. The language here in question is, no person "owning, controlling, driving or operating any passenger vehicle, shall cause or permit such vehicle to stand" longer than the time stated. The words "cause" and "permit" indicate voluntary and intentional

action. As was said in the *Haggenjos case,* the language must be interpreted according to the ordinary meaning of the words and in connection with other portions of the traffic ordinances which require stops under certain circumstances, and it could not be regarded as a violation of the ordinance to stand on the street during a stop which is required by another ordinance or by traffic conditions at the time and place. An accident or emergency beyond the control of the driver is not within the terms of the ordinance.

The plaintiff in error contends that the ordinance of March 18, 1929, is void and should not have been received in evidence because it is an attempt to amend the ordinance of December 14, 1927, which was declared void in the *Haggenjos case.* The title given to the ordinance is, "An ordinance amending section 3855 of the Chicago municipal code of 1922 as amended," and the ordinance proceeds to enact that section 3855 be amended to read as follows, (then follows the section as amended.) It is a complete ordinance of itself, prescribing rules in regard to the subject matter of the parking of vehicles within the limits defined in the ordinance. In *School Directors* v. *School Directors,* 73 Ill 249, it was held that the will of the General Assembly expressed in an act possessing all the requisites of a valid statute and containing clear requirements capable of being carried into effect cannot be defeated and the act declared void because of an incorrect reference to the date of an enactment intended to be amended, but that the mistaken date will be treated as surplusage and will not affect the validity of the amendment. "An unessential false description can never defeat a grant, contract or other instrument, nor should it defeat a statute." This decision was followed in *People* v. *Onahan,* 170 Ill. 449. The court cited to the same effect *People* v. *Canvassers,* 143 N. Y. 84, that "the enactment of this law is put into the form of an amendment of a law which was standing upon the statute books, and whether that earlier law, by force of subsequent legis-

lation, had become inoperative is wholly immaterial. The only question is, Has the legislature, in the enactment complained of, expressed its purpose intelligibly and provided fully upon the subject? If it has, then its act is valid and must be upheld." In *Wilder* v. *Aurora, DeKalb and Rockford Electric Traction Co.* 216 Ill. 493, at page 520, it was held "that an act which possesses all the attributes of a complete statute in itself is not invalid because passed as an amendment to an act which had become inoperative." "The only question is, Has the legislature expressed its purpose intelligibly and provided fully upon the subject? If it has, then the act is valid and must be upheld." (*Patton* v. *People,* 229 Ill. 512, citing *People* v. *Canvassers, supra.*) This is also the conclusion reached by the Supreme Court of Nevada after a discussion of the question, in which many authorities are cited, in *Worthington* v. *District Court,* 142 Pac. (Nev.) 230.

In *People* v. *Bowman,* 253 Ill. 234, a specific objection was made to certain city taxes that the second appropriation ordinance, No. 1634, which was the basis of the levy, recited in its title that it was an ordinance to amend ordinance No. 1633, and since that ordinance never, in fact, became an ordinance at all for want of publication, the second ordinance purporting to amend the void ordinance was invalid. The court refused to sustain this contention, saying that ordinance No. 1634 is a complete ordinance in and of itself and appropriates $581,000 to defraying the necessary expenses and liabilities of the city and distributes the appropriation to the various purposes and departments of the city government, that "the reference to ordinance No. 1633 in the title does not affect the body of the ordinance and may be rejected as surplusage."

The judgment is affirmed. *Judgment affirmed.*