(No. 34717.—

CHICAGO NATIONAL BANK, Appellee, *vs.* THE CITY OF CHICAGO HEIGHTS *et al.,* Appellants.

*Opinion filed May 21, 1958—Rehearing denied June 20, 1958.*

136

Thompson, Raymond, Mayer, Jenner & Bloomstein, of Chicago, (Anan Raymond, Prentice H. Marshall, Keith F. Bode, all of Chicago, and Stanley A. Wilczynski, of Chicago Heights, of counsel,) for appellants.

A. S. and E. W. Froehlich, of Chicago, (Edmund W. Froehlich, of Chicago, of counsel,) for appellee.

Mr. Justice House delivered the opinion of the court:

This is an appeal by the defendants, the city of Chicago Heights and certain of its officers, from a summary decree in favor of one of two plaintiffs, Chicago National Bank, as trustee, holding an ordinance void and perpetually enjoining the closing of a portion of Otto Boulevard. The trial judge certified that in his opinion the public interest requires a direct appeal to this court.

The pleadings, including the supporting affidavits and photographic exhibits, establish the following facts: Otto Boulevard is about 4½ blocks long. It runs almost due south from Twelfth Street to its junction with Halsted Street, and Halsted approaches the junction from the northeast at an approximate 30-degree angle. Sixteenth Street crosses both Otto and Halsted, the latter at approximately right angles. The portion of Otto involved extends from Sixteenth Street about 200 feet south to the point where it joins Halsted. The three streets thus enclose a triangular plot, known as out-lot B, 68 feet wide on the north abutting on Sixteenth Street and tapering to a point at the intersection of Otto and Halsted. The out-lot was the site of the city hall prior to its destruction by fire. It was sold to private interests, as was the east 21 feet of that part of Otto Boulevard abutting thereon which was vacated. Otto Boulevard was 68.79 feet in width prior to the vacation of the 21-foot strip. The owner of the triangle, as enlarged, is constructing a building thereon for mercantile use.

On November 9, 1956, the city council of Chicago Heights passed an ordinance closing said south end of Otto Boulevard to all vehicular traffic, except fire, police and other casualty vehicles, and restricted its use to pedestrian traffic. The ordinance recited that an undesirable traffic problem existed under present usage and that it was deemed in the public interest and safety to correct the situation. The city plans to transform the restricted area into a pedestrian walk, designated a mall, for use of the public. On November 10, 1956, the city officials caused barriers to be erected at either end thereby preventing vehicular traffic from entering, but leaving it open for pedestrians.

Plaintiff, as trustee, is the owner of two of a row of buildings on the west side of that part of Otto Boulevard in question. A 16-foot wide alleyway open to both vehicles and pedestrians runs along the rear of such buildings. It is contended, first, that the ordinance closing the street was

beyond the power and authority of the city and, second, that it was in violation of plaintiff's constitutional rights. A mandatory injunction was sought to restore the street to full public use and an injunction restraining the city from obstructing the street and for incidental damages. Plaintiff later filed a motion for summary judgment with supporting affidavits.

The defendants answered denying that they acted without authority or that the ordinance was invalid, and filed affidavits in opposition to summary judgment. They assert that the convergence of merging vehicular traffic created a dangerous condition, and that the public by taking a short cut through Otto Boulevard to reach Halsted added to the dangers of both vehicular and pedestrian traffic, as did constant circling of the triangular plot by the public in search of parking spaces.

Two sections of the Revised Cities and Villages Act are relied upon as authorizing the challenged ordinance. Section 23—10 (Ill. Rev. Stat. 1957, chap. 24, par. 23—10) grants the corporate authorities power "To regulate the use of the streets," and section 23—27 (Ill. Rev. Stat. 1957, chap. 24, par. 23—27) provides the power "To regulate traffic * * * upon the streets, sidewalks, public places, and municipal property." While conceding the city's right to regulate, plaintiff insists that it does not have the right to prohibit.

In determining issues similar to the situation here presented, we have adhered to the rule that regulation must be a reasonable exercise of the authority granted. (*People ex rel. Armanetti, Inc.* v. *City of Chicago,* 415 Ill. 165; *Haggenjos* v. *City of Chicago,* 336 Ill. 573.) The regulation of city streets is an ever changing problem. No final or absolute rule can be laid down to determine reasonableness, (*People ex rel. Mather* v. *Field & Co.* 266 Ill. 609,) but the circumstances of each particular situation, viewed

in the light of the purpose sought to be accomplished, must be weighed.

In *Calumet Federal Savings & Loan Ass'n* v. *City of Chicago,* 306 Ill. App. 524, the city constructed permanent barrier curbs across Torrence Avenue between Ninety-seventh Street and Ninety-fifth Street thereby preventing through north and south traffic on Torrence between Ninety-fifth and Ninety-seventh. The court there held that the placing of the curbs did not amount to vacation but was merely a regulation of use, and was a reasonable exercise of the police power in the interest of public safety. Cf. *Illinois Malleable Iron Co.* v. *Comrs. of Lincoln Park,* 263 Ill. 446; *Weage* v. *Chicago and Western Indiana Railroad Co.* 227 Ill. 421.

The case of *Village of Lake Bluff* v. *Dalitsch,* 415 Ill. 476, involved a narrow driveway running east to the shore of Lake Michigan. It was dedicated to and accepted by the village of Lake Bluff with a condition annexed requiring its maintenance and use as a pleasure driveway. It was open for many years for both pedestrian and vehicular traffic. With the advent of heavy automotive traffic, the driveway was closed by ordinance to vehicular traffic and large boulders were placed at its west terminus. We there found the regulation reasonable and held that it was proper to bar vehicles under the regulatory and police powers in the interest of public safety.

Plaintiff argues that the *Dalitsch case* does not apply since it dealt with a pleasure driveway and that there are separate statutory provisions for the establishment of pleasure driveways, which specifically authorize the prescribing of the kind of vehicles which may operate thereon. (Ill. Rev. Stat. 1957, chap. 24, pars. 69—7 and 69—10.) This argument overlooks two things. First, it does not appear that the municipality had ever taken the requisite steps to make the driveway in that case a pleasure driveway, hence

it would not be subject to those statutory provisions. Second, this court decided in the *Dalitsch case* that the ordinance was a reasonable and proper exercise of its regulatory and police powers in the interest of public safety. We feel that what was there said should apply to the public involved in that case, since both measures were in the interest of safety to the public.

There are 189 citations of authority in plaintiff's brief, largely in support of general principles. Briefly summarized they deal with the holding of public streets and highways in trust for the purposes for which they were created; the expressions of legislative intention that public highways shall be kept inviolate without encroachment; the principle that municipalities possess only such powers over highways as the legislature has conferred, either expressly or by necessary implication; the rule that empowering statutes should be strictly construed and that there is no presumption of the validity of an ordinance when it is assailed for lack of power to enact it; and the principle that municipalities are clothed only with such police powers as are necessary to implement actually delegated powers. These principles are so well known and understood that they require no elaboration.

The heart of plaintiff's contention is that while the city has the power to regulate (although not conceding this to be a proper regulation), the ordinance in question prohibits rather than regulates and is therefore void. In support of its theory plaintiff cites several cases. *Chicago Motor Coach Co.* v. *City of Chicago,* 337 Ill. 200, involved an ordinance prohibiting the operation of motor buses on the streets of Chicago without first securing authority from the city council. In *Haggenjos* v. *City of Chicago,* 336 Ill. 573, the city adopted an ordinance prohibiting all vehicles from standing on any street or alley within the "loop" during a business day. In the case of *City of Chicago* v. *Collins,* 175 Ill. 445, an attempt was made to exact a wheel tax on

all vehicles using the streets. In each of the foregoing cases the ordinance was held void. Language in those decisions when taken out of context may seem to support plaintiff's position, but the rationale of the holdings is that there was an unreasonable exercise of regulatory power under the circumstances there prevailing.

The right to *regulate,* under proper circumstances has been held to include the right to *prohibit.* In *City of Chicago* v. *Rhine,* 363 Ill. 619, the right to regulate sidewalk sales was held to include the power to prohibit such sales; and in *City of Elmhurst* v. *Buettgen,* 394 Ill. 248, the power to regulate traffic upon streets and sidewalks was held to include the power to prohibit vehicles upon sidewalks; and again in *People ex rel. Armanetti, Inc.* v. *City of Chicago,* 415 Ill. 165, the right to regulate the use of the space above streets included the power to prohibit certain signs without the city's approval.

The real question is not whether, under the power to regulate, a municipality can prohibit, but, as heretofore stated, whether the measure adopted is a reasonable exercise of the power. In applying the test of reasonableness to the case before us, we find no attempt to prohibit traffic on all streets, or on all of one street. On the contrary, the ordinance closes a 200-foot stretch of narrow street to normal vehicular traffic. The part closed is roughly parallel to a through street less than 80 feet away at the furthest point. The ordinance recites the existence of a traffic problem dangerous to the public interest and safety. The physical facts alleged bear out the city's appraisal of the situation. The business district developed around the old municipal building formerly occupying the triangular lot, with a consequent increase in the flow of traffic. The public uses this portion of Otto Boulevard to avoid traffic lights in getting into Halsted, thereby creating a merging traffic problem. Drivers circling the triangular tract seeking parking spaces could create a dangerous situation for pedestrians

attempting to shop on both sides of the street. Offstreet parking provided by the city helped relieve the situation, but was not sufficient to eliminate the danger. The ordinance in question was passed only after a study by the city's planning commission, which unanimously recommended the development of a mall for pedestrian use. After careful consideration, we are of the opinion that the ordinance is an entirely reasonable exercise of regulatory power to provide for the safety and welfare of the public.

The record contradicts plaintiff's contention that the ordinance in question is in reality an ordinance vacating the street. The vacation of a public street involves a complete abandonment and terminates the rights of the public therein. Here, the ordinance does not seek to vacate but restricts its public use to pedestrian and emergency vehicular traffic. It has in effect made a sidewalk of this portion of the street and has the power under section 23—27 to regulate traffic upon sidewalks.

It is charged in the complaint that the ordinance violates plaintiff's constitutional rights in that it denies due process, that it takes property without just compensation and violates section 22 of article IV of the constitution. No specific constitutional violations are referred to in plaintiff's brief, but it is argued that real estate abutting upon a highway enjoys an easement or right of access, and such easement is a property right and cannot be taken without just compensation. A number of cases are cited including *Pure Oil Co.* v. *City of Northlake,* 10 Ill.2d 241; *Department of Public Works* v. *Wolf,* 414 Ill. 386, and *Lydy, Inc.* v. *City of Chicago,* 356 Ill. 230. In the *Northlake case* an ordinance was declared invalid because it purported to authorize an outright denial of a driveway permit, thereby preventing access to the street. The *Lydy case* involved an ordinance which delegated the issuance of driveway permits to the commissioner of public works. It was decided on the basis that legislative authority was delegated without providing ade-

quate standards. If these and similar cases are cited to support the principle that valuable property rights cannot be taken without just compensation, there can be no disagreement. Section 13 of article II of the constitution provides that safeguard and affords a remedy that will satisfy due process.

None of plaintiff's property has been physically taken. Consequential damages may result from the inconvenience of limited access, and, if so, compensation therefor may be claimed in a proper action at law. (*Childs & Co.* v. *City of Chicago,* 279 Ill. 623, *County of Mercer* v. *Wolff,* 237 Ill. 74). We have held the ascertainment and payment of damages in such cases is not a condition precedent to the exercise of the power. (*Penn Mutual Life Ins. Co.* v. *Heiss,* 141 Ill. 35; *Parker* v. *Catholic Bishop of Chicago,* 146 Ill. 158; *People ex rel. Tyson* v. *Kelly,* 379 Ill. 297; *Department of Public Works* v. *Butler Co.* 13 Ill.2d 537.) There is no violation of due process by the enactment of the ordinance.

The complaint and reply allege in substance that the ordinance is primarily intended to benefit the purchaser of out-lot B, and thereby question the motive for the ordinance. Both parties now agree that motive is immaterial and we have so held. (*City of Amboy* v. *Illinois Central Railroad Co.* 236 Ill. 237; *City of Chicago* v. *Waters,* 363 Ill. 125.) Plaintiff argues, however, that it may attack the ordinance because of unlawful "object" or "purpose," and cites *People ex rel. Burton* v. *Corn Products Refining Co.* 286 Ill. 226, and *People ex rel. Weber* v. *Atkins,* 295 Ill. 165. Those cases turned upon the question of whether the purpose effected by the ordinance is within the power of the city council, and if within the power they are valid. In the *Corn Products Co.* case the overhead structure and the vacation of the street were found to be outside the power of the city because the two questioned ordinances were purely for the benefit of private interests and a per-

version of the city's power. The *City of Amboy case* held the ordinance involved to be within the power of the city and it was not disturbed. We have found herein that the city had the legal power to pass the ordinance and that the exercise of the power was reasonable. Under such circumstances no further inquiry is permitted.

In the light of the purpose expressed in the ordinance, the peculiar arrangement of the streets and buildings in the immediate area, the undesirable, if not dangerous, traffic conditions sought to be eliminated, and the safety with which pedestrians can walk and shop without being subjected to the hazards of vehicular traffic, we hold the questioned ordinance to be a valid exercise of the regulatory powers of the city. Plaintiff's motion for summary judgment has necessitated consideration of the entire record. (*Brown Co.* v. *Simmons Co.* 2 Ill. App.2d 132.) We are of the opinion that no triable material issue of fact exists and, therefore, the decree of the circuit court of Cook County is reversed and the cause remanded, with directions to dismiss plaintiff's complaint.

*Reversed and remanded, with directions.*