Ernest Salomone et al., Plaintiffs-Appellees, v. City of Canton, a Municipal Corporation, et al., Defendants-Appellants.

Gen. No. 10,353.

Third District.

June 22, 1961.

Chiperfield & Chiperfield, James F. Scott, Lawrence B. McMunn, and Ralph Froehling, of Canton, for appellants.

Scott & Sebo, of Canton, for appellees.

CARROLL, PRESIDING JUSTICE.

Plaintiffs, owners of business and residential properties bordering upon certain portions of a public highway in the City of Canton, filed suit against the City and its officials, asking judgment declaring a "no parking" ordinance invalid and an injunction against enforcement of said ordinance. The Court below found the ordinance to be unreasonable, declared it to be void and granted the relief prayed by plaintiffs. Defendants took an appeal to the Supreme Court, which ordered the cause transferred to this Court.

The subject highway is commonly known as Route 78 which is described as a 2 mile course along Main, Locust and Fifth Streets in Canton covering 24 blocks. The width of the street varies from 26 feet to 50 feet.

Two blocks are 26 feet in width, 10 blocks are 30 feet in width, 11 blocks are 36 feet in width, and one block is 50 feet in width. Some years prior to the adoption of the ordinance in question, parking was eliminated on the two blocks which are 26 feet in width by the provision of an ordinance, the validity of which is not questioned. Likewise as to the ten blocks which are 30 feet in width, parking was eliminated on one side of the street under the provisions of an ordinance, the validity of which is not questioned. The character of the properties abutting the street is mixed. It apparently was at one time all residential, but with the growth of the community, 75 or 80 non-residential establishments are located thereon. Among the various types of establishments referred to are, professional offices, service stations, retail stores, churches, schools, as well as one large factory in the vicinity of the highway. The ordinance in question is known as Ordinance 387 and provides as follows:

Section 1. That, except for Sunday, it shall be unlawful for any person, firm or corporation to park any vehicle on the following streets of Canton, Illinois:

(1) On Fifth Avenue From Linn Street to Locust Street in said City.

(2) On Locust Street from Fifth Avenue to Main Street in said City.

(3) On Main Street from Locust Street to Birch Street in said City.

Section 2. It shall be the duty of the Superintendent of Streets or the Police Department to erect appropriate signs as will apprise the operators of vehicles of the provisions of this ordinance.

Section 3. That any person, firm or corporation convicted for a violation of this Ordinance shall be punished by a fine of not less than three dol-

lars ($3) nor more than two hundred dollars ($200).

Section 4. This Ordinance shall be in force and effect ten days after its passage by the City Council, approval by the Mayor and publication according to law.

This ordinance was passed and approved on December 3, 1958, after which this suit was commenced by the plaintiffs to have it declared invalid for various reasons including its alleged unconstitutionality. We are concerned only with the alleged ground of unreasonableness.

Numerous witnesses testified in behalf of the plaintiffs to the effect that parking facilities were inadequate to accommodate patrons of the business and professional establishments along certain portions of the highway. One witness, a doctor, testified that the parking prohibition would force his patients to walk at least 1½ blocks to reach his office. The treasurer of one church testified that older members of the congregation would not be able to park near the church for the many weekday meetings and attendance would suffer. Some of the witnesses testified that they had moved to their present location to avoid parking problems that had existed in the central business area of the community. There was also testimony that substantial sums of money had been applied to the remodeling and renovation of the present properties to accommodate the business and professional offices located thereon. There was some testimony that the parking prohibition would result in a decrease in some of the businesses and professions. There was testimony that accident frequency along the road was minimal. There was testimony to the effect that the presence of parked vehicles along the road caused no undue delays in the flow of traffic. This testimony

476

resulted from test drives by plaintiffs' witnesses after the commencement of the action.

It seems undisputed that traffic conditions are approximately the same from Monday through Friday and despite the fact that Sunday is excepted from the provisions of the ordinance there is evidence that there is no difference in the amount of traffic on the street in question on Saturday and Sunday from what it is from Monday through Friday.

A 1956 traffic survey by the Safety Department of the State of Illinois showed a maximum traffic count of 8871 vehicles for a 24 hour period and a minimum of 5192 for a like period over the road in question. This survey indicates an increase in traffic of from 20 per cent to 40 per cent over that indicated by a 1948 survey. Defendants' witness, a traffic engineer with the Department of Safety for the State of Illinois, testified that traffic counts exceeding 8000 indicate that four 12 foot lanes are *desirable.* There apparently was some question as to whether the City of Canton would take the necessary steps to effect widening of the entire road so as to accommodate such multiple-laned traffic as a condition to a federal aid program. Plaintiffs produced evidence of traffic counts which they had taken. These show traffic to be light excepting during the usual rush hours, i.e., 11:00 a.m. to 5:00 p.m., when the traffic is moderate.

There is considerable testimony in the record as to the time required to traverse the 2 mile distance. Numerous test drives were made at various times during the day using a stop watch. The time required to traverse the distance varied from 4½ minutes to 9 minutes, which time, according to the state engineer, was within normal limits. It would therefore appear that insofar as the flow of traffic is concerned no problem exists and it should be further noted that prior to the adoption of the ordinance in question no recent traffic survey had been made by the City.

Council. Prior to the adoption of the ordinance in question there was no unusual congestion on the street in question and the traffic conditions were not detrimental to the public health, safety or welfare.

There is no question but that plaintiffs' witnesses established that they would suffer a particular kind of burden if the ordinance in question were enforced. There is no question but that where the General Assembly has delegated power without specifying the manner in which such power shall be exercised, the Courts may inquire into the reasonableness of the ordinance passed by a municipality in the course of its exercising such power. Such judicial inquiry, however, must be carefully and cautiously exercised. The ordinance must constitute an unreasonable exercise of the power vested before the Court can declare it to be invalid on that ground. In other words, the question of the existence of a connection between a given ordinance and the power claimed to be exercised thereby is primarily one for legislative determination and the Courts will not interfere unless the ordinance clearly appears to be unreasonable. This proposition appears to be well settled. Dean Milk Company v. City of Chicago, 385 Ill. 565, 53 N.E.2d 612; Chasteen v. City of Decatur, 21 Ill.App.2d 496, 158 N.E.2d 446.

Two sections of the Revised Cities and Villages Act are relied upon as authorizing the challenged ordinance. Section 23–10 (Ill. Rev. Stat. 1959, chap 24, par 23–10) grants the corporate authorities power "to regulate the use of the streets", and section 23–27 (Ill. Rev. Stat. 1959, chap 24, par 23–27) provides the power "To regulate traffic . . . upon the streets, sidewalks, public places and municipal property." These two sections have been considered and construed by the Supreme Court of this state in two cases involving ordinances purportedly designated to accomplish that which the City of Canton ordinance purports to accomplish.

In Haggenjos v. City of Chicago, 336 Ill. 573, 168 N.E. 661, the City of Chicago adopted a so-called "no parking" ordinance by which. it was made unlawful for any person to cause or permit any vehicle to stand on any public street within an area comprising the downtown shopping and office district of the City of Chicago of approximately 63 square blocks, between the hours of 7:00 a. m. and 6:30 p. m. except on Sundays and certain holidays and on Saturdays after 3:00 p. m. The ordinance expressly provided that it should not apply to ambulances and emergency vehicles of the City, the Federal Government, the County, or any public utility engaged in emergency business. Plaintiff, a citizen, was arrested for violation of the ordinance and he challenged its validity. The record showed that the area covered by the ordinance was much congested as a result of the parking of automobiles on both sides of the streets continuously during each day and that the ordinance had been adopted after an exhaustive and expensive survey of the conditions and of means to remedy the problem.

In approaching the question as to the validity of the ordinance in question the Supreme Court recognized, as does this court, that the legislature has granted to Cities the right to regulate traffic on its streets; that without a regulation of traffic and the parking of vehicles, streets may become congested and dangerous; and that the public welfare, safety and convenience may require reasonable regulations in this regard. The court recognized that the Legislature had left it to the City to determine what was required to meet the problem, *with the limitation however,* that the exercise of the power must be reasonable. An analysis of this case also discloses, that it is recognized that while streets are primarily intended for travel, the right of travel is not absolute and that necessity may require the temporary or partial interference with the primary right of travel; that property owners

abutting on streets have some rights in the use of the parts of streets upon which their lots abut for the convenience of those lots, as long as the assertion of those rights is not inconsistent with the primary right of the public to use the streets in all their parts. The court then aptly illustrated this doctrine as follows:

> "The delivery of merchandise, fuel or other articles, and of persons, at business and other houses on a street, is a necessary incident to the use of a public highway. The streets of a city would be of comparatively little use, if merchants could not deposit their goods in them temporarily in their transit to the storehouse, or if vehicles carrying their goods could not stand on the street in front of their stores to deliver goods transported. A merchant may use and temporarily obstruct the street and sidewalk in front of his premises for loading and unloading goods, when not restrained by ordinance, if he does not unnecessarily or unreasonably interfere with their use by the traveling public. Skids may be used in a reasonable manner, so as not to unnecessarily encumber or obstruct the sidewalk, for the purpose of facilitating the removal of merchandise. John A. Tolman & Co. v. City of Chicago, 240 Ill. 268, 88 N.E. 488, 24 L. R. A. (N. S.) 97, 16 Ann. Cas. 142.

> So automobiles and other vehicles may be used for the same purpose, and neither the skids nor the automobiles, or other vehicles may be absolutely prohibited from so occupying the sidewalk or street."

In concluding that the ordinance of the City of Chicago was invalid, in and of itself, the court said:

> " . . . it was not a reasonable exercise of the power to prohibit the standing of any vehicle on

the streets for any purpose, or for any time, so as to prohibit throughout all the business hours of every business day the free use of the streets, in a reasonable way, to the people within the territory mentioned, and those desiring to transact business with them, to have reasonable and convenient access by automobile to the various parts of the territory described in the ordinance for the transaction of business and the receipt and delivery of goods in the ordinary way."

Subsequent to the decision in the foregoing case the ordinance of the City of Chicago was amended. The validity of the amended ordinance was before the Supreme Court in the case of City of Chicago v. McKinley, 344 Ill. 297, 176 N.E. 261. By the amendment it was provided that vehicles should not be stopped for a period of time longer than is necessary "for the reasonably expeditious loading or unloading of passengers, provided such loading or unloading shall not consume more than three minutes; or to stand any commercial vehicle for a period of time longer than is necessary for the reasonably expeditious loading, unloading and delivery or pick-up of materials, provided such loading, unloading and delivery or pick-up shall not consume more than thirty minutes". It also provided that "this section shall not apply to any vehicle brought to a stop to avoid collision, or standing in compliance with the orders of any public officer or the direction of any traffic control signal." In all other respects the ordinance was the same as that in the Haggenjos case.

The same Justices, with one exception, considered the McKinley case and the Haggenjos case. The same Justice wrote both opinions. Although the amended ordinance was held valid, the principles announced in the Haggenjos case were reaffirmed. Succinctly stated the court in the McKinley case said:

481

"Parking may be regulated as to time when, place where, and length of time permitted, due consideration being given to the necessities and convenience of those desiring to use the streets for going from one place to another, and of those who desire to use them for the transportation, delivery, and shipping of merchandise, materials, fuel, and supplies and the character of the traffic affected."

A comparison of the ordinance of the City of Canton with those involved in the above cases immediately discloses vast differences. It is apparent that the former is much more prohibitive than that involved in the Haggenjos case. In fact the City of Canton ordinance *prohibits* all parking of any type or character, at all times except on Sunday.

The Haggenjos case was recently cited in Chicago National Bank v. City of Chicago Heights, 14 Ill.2d 135, 150 N.E.2d 827, relied on by defendants. In the Chicago National Bank case, supra, the basic rule announced in the Haggenjos case was adhered to. In that case the validity of an ordinance closing a 200 foot strip of a narrow street and converting it into a pedestrian mall was under attack. The area involved was located at the convergence and intersection of three streets at various angles. The ordinance recited the existence of a dangerous traffic problem and the physical facts and surveys substantiated this recitation. Property owners who were complaining had full access to their lots through an alley abutting on the rear of their lots. The sum and substance of the holding in this case is that the ordinance in question was regulatory in character to provide for the safety and welfare of the public. The court said:

"In the light of the purpose expressed in the ordinance, the peculiar arrangement of the streets and buildings in the immediate area, the undesirable,

if not dangerous, traffic conditions sought to be eliminated, and the safety with which pedestrians can walk and shop without being subjected to the hazards of vehicular traffic, we hold the questioned ordinance to be a valid exercise of the regulatory powers of the city."

We are in accord with the observation of the Supreme Court in the Chicago National Bank case that the regulation of city streets is an ever changing problem. A municipality is not required to wait until traffic problems become acute before they can justify a regulatory ordinance. We entertain no doubt that a proper ordinance can be drafted by the City of Canton that will adequately regulate present or anticipated traffic conditions and properly promote public safety and welfare and at the same time meet the standards established by the foregoing authorities. Suffice it to say that the ordinance of the City of Canton, in its present form, does not meet the required tests.

For the reasons indicated the judgment of the Circuit Court is affirmed.

Affirmed.

REYNOLDS, J. concurs.

ROETH, J. took no part.