(No. 26782.—

THE CITY OF BLOOMINGTON, Appellee, *vs.* R. E. WIRRICK, Appellant.

*Opinion filed November 18, 1942—Rehearing denied Jan. 14, 1943.*

348

WAYNE C. TOWNLEY, J. OSCAR HALL, and BRAUN & BRODIE, (ODE L. RANKIN, and HUGH NEILL JOHNSON, of counsel,) for appellant.

RICHARD M. O'CONNELL, City Attorney, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of McLean county. The case involves the validity of an ordinance of the city of Bloomington, commonly referred to as a parking-meter ordinance. Appellant violated the provisions of the ordinance by parking in designated parking places, where meters had been installed, without depositing coins in the meters as provided by the ordinance. He was charged, by a complaint filed with a justice of the peace, with violating the ordinance. He appealed from the judgment of the justice, finding him guilty, to the circuit court of McLean county. That court upon a hearing found appellant guilty and imposed a fine under the penalty section of the ordinance. The trial judge certified that the validity of a municipal ordinance was involved in the case, but did not certify that in his opinion the public interest required that the appeal be taken directly to this court, as provided in section 75(1) of the Civil Practice Act. Ill. Rev. Stat. 1941, chap. 110, par. 199.

On the oral argument the question was raised as to the jurisdiction of this court on direct appeal in the absence of a certificate of the trial judge, not only that the validity of a municipal ordinance was involved, but that in the opinion of the trial judge the public interest required an appeal direct to this court. *City of Litchfield* v. *Hart*, 372 Ill. 457.

Following the oral argument appellant tendered a proper certificate of the trial judge together with a motion for leave to file the same. The motion was denied. In cases

where such certificate is required, the filing of the certificate is jurisdictional and it must be filed in this court within the time allowed for filing the record. *First National Bank of Woodlawn* v. *Watkins,* 370 Ill. 445; *Segal* v. *Chicago City Railway Co.* 339 id. 635.

Upon consideration of this jurisdictional question, we have reached the conclusion that where constitutional questions are properly raised in the trial court, where the validity of a municipal ordinance is involved in such questions, no such certificate of the trial judge is required to give this court jurisdiction on direct appeal. (*Village of Lake Zurich* v. *Deschauer,* 310 Ill. 209; *People ex rel. Healy* v. *Clean Street Co.* 225 id. 470.) The proper construction of the statute is that in all cases in which a construction of the constitution is involved, appeals may be taken directly to this court regardless of the fact that the constitutional questions raised may affect the validity of a municipal ordinance. The statute contemplates that the certificate of the trial judge to the effect that the validity of a municipal ordinance is involved and that in his opinion the public interest requires an appeal directly to this court, shall only be necessary to give this court jurisdiction in cases where the ordinance is attacked on other than constitutional grounds.

The case of *City of Litchfield* v. *Hart, supra,* was a direct appeal from the circuit court where the validity of a municipal ordinance was involved. There was no certificate of the trial judge as required by section 75(1) of the Civil Practice Act. The cause was transferred to the Appellate Court. In the course of the opinion, however, it was said that no constitutional questions were presented. The cause was transferred because no certificate of the trial judge was filed. The fact that the ordinance is here attacked on constitutional grounds is, in our opinion, sufficient to give this court jurisdiction on direct appeal without the certificate of the trial judge.

The city of Bloomington claims the right to pass the ordinance in question under subsections 10, 18, 20, 27 and 105 of section 23 of the Revised Cities and Villages Act; (Ill. Rev. Stat. 1941, chap. 24, par. 23-1, *et seq.*;) also under section 26 of the Uniform Act Regulating Traffic on Highways. (Ill. Rev. Stat. 1941, chap. 95½, par. 123.) We will first direct our attention to the provisions of the Revised Cities and Villages Act relied upon as the source of the power claimed.

Subsection 10 gives to municipalities the power "To regulate the use of the streets and other municipal property." (Ill. Rev. Stat. 1941, chap. 24, par. 23-10.) Subsection 18 confers power on municipalities to provide for and regulate cross-walks, curbs and gutters. (Ill. Rev. Stat. 1941, chap. 24, par. 23-18.) Subsection 20, in so far as it may be claimed to be material, delegates to municipalities the power "To regulate the use of sidewalks, the construction, repair, and use of openings in sidewalks, and all vaults and structures thereunder," etc. (Ill. Rev. Stat. 1941, chap. 24, par. 23-20.) Subsection 27 confers on cities and villages the power "To regulate traffic and sales upon the streets, sidewalks, public places, and municipal property." (Ill. Rev. Stat. 1941, chap. 24, par. 23-27.) Subsection 105 grants the power "To pass and enforce all necessary police ordinances." (Ill. Rev. Stat. 1941, chap. 24, par. 23-105.) It is contended by appellant that the legislature has not conferred upon municipalities the power to pass ordinances of the character here involved. He further contends that the General Assembly cannot, under the constitution, delegate such power to municipalities; that the ordinance is in conflict with certain provisions of the Motor Vehicle Law, (Ill. Rev. Stat. 1941, chap. 95½, par. 32, 32a,) and of the Uniform Act Regulating Traffic on Highways. (Ill. Rev. Stat. 1941, chap. 95½, par. 127.) It is also claimed that the ordinance is in conflict with the fourteenth amendment to the constitution of the United

States, as well as various provisions of the constitution of this State.

It has long been the established rule in Illinois that municipalities may only exercise the powers delegated to them by the General Assembly. All legislative power is vested in the General Assembly by the constitution. That body may exercise the power directly or it may create municipalities and delegate to them, for the purposes of local government, such portion of the power as it sees fit to grant. Municipal corporations owe their existence to, and their powers are derived solely from, the General Assembly. They have no inherent power. In order to legislate upon, or with reference to, a particular subject, they must be able to point to the statute which gives them the authority to exercise the power which they claim the right to exercise. Statutes granting powers to municipal corporations are strictly construed. Any fair or reasonable doubt of the existence of the power is resolved against the municipality which claims the right to exercise it. The implied powers which a municipal corporation possesses and can exercise, are only those necessarily incident to the powers expressly granted. Inasmuch as a city has no power, except by delegation from the General Assembly, in order to enable it to impose any tax or license fee, the power must be expressly granted or be necessarily implied in, or incident to, the powers expressly delegated. *People ex rel. Lapice* v. *Wolper,* 350 Ill. 461; *City of Rockford* v. *Nolan,* 316 id. 60; *Arms* v. *City of Chicago,* 314 id. 316; *Potson* v. *City of Chicago,* 304 id. 222; *City of Chicago* v. *Pettibone & Co.* 267 id. 573; *City of Chicago* v. *Mandel Bros.* 264 id. 206; *People ex rel. Friend* v. *City of Chicago,* 261 id. 16; *City of Chicago* v. *Ross,* 257 id. 76; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264; *Wilkie* v. *City of Chicago,* 188 id. 444.

Subsection 1 of section 23 of the Revised Cities and Villages Act provides that the city council in cities shall

have and may exercise the powers enumerated in subsections 2 to 107, inclusive, of that section. This express enumeration of the powers conferred upon municipalities, is an exclusion of all other powers not expressly delegated to them, and which are not necessarily implied in those expressly delegated. (*People* v. *City of Chicago, supra; Potson* v. *City of Chicago, supra.*) It is also the rule that a city may derive its powers to legislate upon a given subject, from one item or from two or more items enumerated in this section. *Consumers Co.* v. *City of Chicago,* 313 Ill. 408; *Goodrich* v. *Busse,* 247 id. 366; *Spiegler* v. *City of Chicago,* 216 id. 114; *Gundling* v. *City of Chicago,* 176 id. 340; *Potson* v. *City of Chicago, supra.*

With these general rules in mind, it becomes necessary to determine whether the power to pass the ordinance in question has been delegated to the city of Bloomington. In arriving at a decision of this question, it seems obvious that some of the provisions of the statute relied upon, as conferring the power, may be readily eliminated without any extended discussion. For instance, subsection 18 relates solely to the power to provide for and regulate crosswalks, curbs and gutters. It cannot be contended with any degree of sincerity that by the delegation of power found in this subsection, the municipality has been given the power attempted to be exercised by the ordinance here involved. What is said with reference to subsection 18 is equally applicable to subsection 20. This subsection relates solely to the use of sidewalks, the construction, repair and use of openings in sidewalks and vaults and structures thereunder. The only additional power conferred by this subsection is the power to require the owner or occupant of premises to keep the abutting sidewalks free from snow or other obstructions. Neither is the power claimed conferred by subsection 105, by which municipalities are given the power "To pass and enforce all necessary police ordinances." The power delegated by this subsection relates

solely to the enforcement of ordinances and regulations passed, adopted and promulgated by the city under powers conferred by other provisions of the statute. It confers no additional powers and cannot be invoked as an independent source of legislative power. It can hardly be said to be either appropriate or intended to confer any power, except the power to carry out other powers properly delegated. This eliminates from further consideration the provisions of the Revised Cities and Villages Act which are claimed by the city to delegate to it the powers here sought to be exercised, except such powers as are delegated by subsection 10, to regulate the use of the streets, and subsection 27, which confers power to regulate traffic and sales upon the streets, sidewalks and other public places.

The question for decision is whether, under the power to regulate the use of the streets conferred by subsection 10, or the power to regulate traffic, contained in subsection 27, the city of Bloomington has the power to pass and enforce the ordinance in question. In other words, the question presented is: Is the right to provide parking spaces in the public streets and parking meters and to impose a charge for the privilege of parking in such spaces, a power included in the delegation of power to regulate the use of streets and traffic thereon? This proposition resolves itself into the inquiry as to whether the use of parking meters as provided in the ordinance constitutes a regulation of the use of the streets or a regulation of traffic, or is so necessarily incident thereto that it can be said to be a power implied in the powers expressly granted. The solution of this question involves a determination of the character of the streets of a city as public highways and the right of the public to use the same, as well as the right of a city to regulate and restrict such use.

The right of a municipality to restrict the use of its public streets was considered by this court in the early case of *Gartside* v. *City of East St. Louis,* 43 Ill. 47. In that

case an ordinance was involved which imposed a license fee on certain commercial vehicles using the streets. The city of East St. Louis was created by a special act of the General Assembly. (Private Laws, 1865, p. 350.) By that act, which was the charter and source of power of the city, it was given power to "direct, license and control, all wagons and other vehicles conveying loads within the city." It was held that this language was broad enough to confer upon the municipality the power to impose a license fee on commercial vehicles operating upon the streets.

In *City of Chicago* v. *Collins*, 175 Ill. 445, an ordinance was involved which imposed a license fee or tax upon all vehicles used in the streets of the city of Chicago, including those in private use, as well as those used for let or hire. The powers of the city in that case were conferred only by the General Cities and Villages Act. At that time there was no language contained in that act, comparable to the provision in the special act under which the city of East St. Louis was organized. It was there said that the streets of a city are held in trust by the municipality for the use of the public for the purpose of travel thereon, which right was vested in the general public, the right to travel being in the general public everywhere; that all persons have a right to pass along and use the streets of a city in all their parts, the full width and length thereof; that the municipality, which is a mere trustee of the public and holds the streets and alleys in trust for the public, could not deny the right of the public to use the streets and alleys; that it could not assume an exclusive ownership and deny the rights of the beneficiaries in their trust and arrogate to itself a power greater than a mere trustee and prevent the use of the streets and alleys by the individuals composing the public; that the right of the public to use the streets was a right to use them for public purposes of travel in all the recognized methods in which the public highways of the State are used. It was further said that

if the right exists in a city to impose a license fee, by way of a tax, on persons using vehicles on the streets, it may, in like manner, impose a license fee for the use of the streets in every other manner of locomotion or travel, including the pedestrian walking along the street.

In *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58, the question was again before the court. In the meantime the legislature had added clause 96 to the section of the statute as it then existed, corresponding to section 23-1 of the present statute. (Ill. Rev. Stat. 1939, chap. 24, par. 65.95.) Clause 96 was added subsequent to the decision in the *Collins case, supra.* The added clause conferred upon municipalities the additional power "to direct, license and control all wagons and other vehicles conveying loads within the city or village or any particular class of such wagons and other vehicles." The court, in the course of the opinion, pointed out that the additional powers were conferred by the amendment of the statute subsequent to the decision in the *Collins case, supra,* and held that the amendment did confer upon municipalities the power to license vehicles conveying loads within the city. This case was followed in *Parsons* v. *City of Herrin,* 293 Ill. 218; *Robbins* v. *City of Herrin,* id. 133; *Harder* v. *City of Chicago,* 235 Ill. 294, and many other cases. It was further said in the opinion (p. 73) that the legislature could lawfully·delegate to municipalities the power to tax *all* vehicles using the public streets without infringing any provision of the constitution; that the only restriction in the constitution on the right to delegate such power is that the delegation be by general law, uniform as to the class upon which it operates.

This reference to the above cases is only material for the purpose of showing the origin of the rule that the power to impose restrictions on the public for the use of the streets must be found in some legislative enactment by which such power is conferred on municipalities. It is a power which does not inherently exist in the municipalities

of this State. It must be found, if found at all, in some legislative grant.

Under the above decisions, and under like authority granted to municipalities to license and tax motor vehicles by section 26 of the Motor Vehicle Law of 1919 (Ill. Rev. Stat. 1941, chap. 95½, par. 32) numerous wheel-tax ordinances applicable to all vehicles belonging to persons residing within the municipality, have been sustained by this court. *City of Lincoln* v. *Gerard*, 329 Ill. 501; *Roe* v. *City of Jacksonville*, 319 id. 215.

It is established by these decisions that the right of the public to use the streets, which for many years was regarded as absolute and subject to no restrictions, must yield to the right of the municipality to impose reasonable regulations, restrictions and licenses for which a fee may be charged.

In 1941 the legislature passed the Revised Cities and Villages Act. By that act all the provisions of the prior Cities and Villages Act on the same subject were repealed. The result is that if municipalities now have the right to regulate parking by the use of parking meters, such power must be found in sections 23-10 or 23-27 of the Revised Cities and Villages Act, or in some other applicable statute.

This brings us to the question of whether the ordinance here involved is a regulation of the use of the streets as provided in said section 23-10 or a regulation of traffic under section 23-27 of the Revised Cities and Villages Act. If the powers attempted to be exercised by the ordinance have not been delegated to the city under said sections of the Revised Cities and Villages Act, then resort must be had to some other statute as the source of the power, if such power exists at all. If the power to enforce the ordinance in question has been delegated to municipalities, the ordinance is valid. If such power has not been so delegated, it is apparent the ordinance cannot be sustained.

The ordinance in question is twofold in its aspect. It first provides for laying out or marking off spaces in the

public streets in which automobiles may be parked. It then fixes a limit on the time during which parking will be lawful in such places. No one would seriously question the power of a municipality to designate certain spaces as parking places and to prohibit the parking of automobiles in other parts of the street. Neither would anyone question the right of the municipality to fix and enforce a time limit on parking. Clearly these are regulations of traffic and the use of the streets. Both the designation of parking spaces and fixing a time limit on parking fall within the powers delegated by both subsections 10 and 27. In *City of Chicago* v. *McKinley,* 344 Ill. 297, it was said (p. 304) : "No doubt it often would be convenient for a person to leave his car temporarily at the curb for such time as suits his convenience while he walks across the sidewalk to do an errand, make a purchase, leave a message, make an appointment, telephone, or attend to some other business in his own or some other person's office, but if one person may do it so may every other person, and soon the curbs on both sides of the street might be lined with parked automobiles, the street crowded, traffic clogged and great inconvenience caused to all persons having occasion to use the street for its primary and legitimate purpose. There is no such right of individuals so to park their cars on the street which may not be regulated by ordinance. Parking may be regulated as to time when, place where and length of time permitted, due consideration being given to the necessities and convenience of those desiring to use the streets for going from one place to another and of those who desire to use them for the transportation, delivery and shipping of merchandise, materials, fuel and supplies and the character of the traffic affected."

If the ordinance did no more than to designate the parking spaces and fix a time limit on parking, there would be no question as to the power of the city to enforce the ordinance. But the ordinance does more than that. After designating parking spaces and fixing the time limits,

clearly within the powers delegated, the ordinance prohibits anyone from parking at all in the places so designated without first depositing a coin in the meter. This is a condition to the right to park in such designated places. No question is raised as to the reasonableness of the charge made.

For what purpose is the parking charge made? It is neither a license fee nor a tax. It is not exacted as a charge for the privilege of parking. The right to park in the street is a right already vested in the public, subject to reasonable regulation as to time and place. But this is not an absolute right. In *City of Chicago* v. *McKinley, supra,* it was said (p. 304), "The traveler on the street has no absolute right to leave his vehicle standing on the street while he goes into a neighboring building to transact business, whether the time occupied in the transaction of the business be long or short." The ordinance does not take away any right vested in the travelers on the public streets. Municipalities have the right to regulate parking in the public streets. (*Pennsylvania Co.* v. *City of Chicago,* 181 Ill. 289; *City of Chicago* v. *McKinley, supra.*) The charge is not for the use of the space for parking. The city cannot rent space in the public streets for a private purpose. (*People ex rel. Lapice* v. *Wolper, supra.*) Section 15 of the ordinance provides: "The coins required to be deposited hereby are levied and assessed as fees to cover the cost of supervision, inspection, installation, operation, maintenance, control and use of the meters and the cost of supervising and regulating the parking of vehicles in the parking meter zone."

By this provision the fees deposited in the meters are appropriated and are to be used for the payment of the cost of installing, supervising and enforcing the restrictions on parking contained in the ordinance.

We have already seen that providing places for parking and imposing time limits on parking are necessary incidents to travel on streets. The imposition of these restrictions

is both a regulation of the use of the streets, under section 23-10, and a regulation of traffic upon the streets, under section 23-27. Necessarily the enforcement of these restrictions is attended with some expense to the city. It requires supervision. Instead of personal supervision by police officers, or others, the ordinance provides for the use of mechanical devises for registering the time of parking. Such a system requires installation, supervision, inspection, operation, maintenance and control. It is for these purposes that the fees are exacted. Under section 15 of the ordinance the fees imposed are to be used in the enforcement of the parking regulations and the time limits fixed by the ordinance. If the city has the power to fix and impose time limits on parking, as it undoubtedly has, it seems to us that it must be conceded that it has the power to defray the cost incident thereto. If it has the power to employ policemen, or others, to enforce such time limits, from the same source and for the same reasons, it has the power to maintain and operate a system by which the time limits fixed by the ordinance may be automatically registered, for the purpose of the enforcement of the ordinance. The meter charge is an expense incident to the installation, operation, supervision and maintenance of the system. The power to impose the fee is a power incident to, and implied in, the power to regulate and limit the time and places in which parking may be permitted.

We are therefore of the opinion that the system provided in the ordinance is a regulation of the use of the streets, under section 23-10, and a regulation of traffic upon the streets, under section 23-27, or so necessarily incident thereto as to become a part of both; that the power to pass and enforce the ordinance in question, if not expressly delegated to municipalities by said sections of the statute, is a power necessarily implied in the powers which are there expressly delegated. This conclusion makes it unnecessary to determine or consider the extent of the powers

granted to municipalities by the applicable sections of the Motor Vehicle Law or the Uniform Act Regulating Traffic on Highways. The ordinance is a regulation which in no way conflicts with the provisions of the Motor Vehicle Law or the Uniform Act Regulating Traffic on Highways, relied upon by appellant. Neither is the ordinance void for the reason that it appropriates for private use the portions of the street which support the standards on which the meters are to be placed. This is a public use, incident to the regulation of traffic upon the streets, for which they are primarily designed. The legislature having delegated to municipalities the power to regulate the use of the streets and traffic thereon, no reason appears why the exercise of this power contravenes any provision of the constitution. (*Roe* v. *City of Jacksonville, supra; Harder's Storage Co.* v. *City of Chicago, supra.*) Nor are we convinced that the ordinance here involved violates any rights of appellant under the fourteenth amendment to the constitution of the United States. In our opinion the ordinance is a valid exercise of powers lawfully delegated to municipalities.

It is finally contended that the ordinance is invalid because it delegates to the mayor authority to create parking zones. This is a misapprehension of the provisions of the ordinance.

An examination of the ordinance in the record shows that this section reads as follows:

"Section 2. The Mayor hereby is authorized and directed to establish zones to be known as parking meter zones upon such streets of the City of Bloomington as he shall select, *with the approval of the Council,* for the location of such zones, and to cause parking meters to be installed and parking meter spaces to be designated as hereinafter provided. The Mayor, from time to time, *with the approval of the Council,* may add to, change, or abandon said parking zones. In selecting, changing, or abandoning said parking meter zones the Mayor shall be

362

guided and governed by location, amount of traffic, the demand for parking space, the congestion of traffic, the use of the street and all other traffic conditions which may be existent."

The judgment of the circuit court of McLean county is affirmed.

*Judgment affirmed.*