YVONNA REDEMSKE, Plaintiff-Appellee, *v.* THE VILLAGE OF
ROMEOVILLE, Defendant-Appellant.

Third District   No. 79-449

Opinion filed June 12, 1980.

BARRY, J., specially concurring.

Richard T. Buck and Theodore J. Jarz, both of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellant.

Roy A. Sabuco and Kurt A. Leinweber, both of Rudman & Sabuco, of Joliet, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant, the village of Romeoville, appeals from the judgment of the Circuit Court of Will County ordering it to reinstate plaintiff, Yvonna Redemske, to her position with the village and awarding her $6,123.97 in damages for wrongful discharge. Mrs. Redemske had been a radio dispatcher with the village from 1966 until her discharge in April 1977. She was discharged specifically for riding in a political parade on April 17, 1977, within the village limits. Her discharge was based expressly upon a village ordinance authorizing the dismissal of any village employee who takes "an active part in a campaign for elective office for the Village of Romeoville."

The circuit court held that the legislature had not delegated to the village the power to so limit political activity on the part of its employees. It found such ordinance to be beyond the authority delegated by the General Assembly. Having so ruled, the circuit court did not address the constitutional issues raised by plaintiff. The court ordered the village to reinstate Yvonna Redemske and also award her back wages, in the amount of $6,123.97. The village of Romeoville appeals and argues (1) that the court erred in concluding that the ordinance was unenforceable due to the lack of statutory authorization from the General Assembly, (2) that the ordinance is constitutional on its face and as applied, and (3) that damages for back pay, in any event, should not have been awarded.

The record reveals that in April 1977, plaintiff Yvonna Redemske had been employed by the village of Romeoville since 1966. She was a civilian employee, not a commissioned officer, and was assigned to the police department as a police matron, serving as a radio dispatcher. In April 1977, there was in effect a village ordinance which restricted the political activities of certain of the village's employees. The ordinance provides:

"WHEREAS, Chapter 24, Section 10—4—1 of the Illinois Revised Statutes provides 'The corporate authorities of any municipality may provide by Ordinance in regard to the relation between all municipal officers and employees in respect to each other, the municipality, and the people', and

WHEREAS, the President and the Board of Trustees of the Village of Romeoville believe it to be in the best interest of the Village and the Village's employees to restrict the activities of its employees in political activities of the Village of Romeoville.

NOW, THEREFORE, BE IT ORDAINED BY THE PRESIDENT AND MEMBERS OF THE BOARD OF TRUSTEES OF THE VILLAGE OF ROMEOVILLE, WILL COUNTY, ILLINOIS: that:

Section 1: *Employees Regulated.* Any employee who is a participant in any retirement or pension system as a result of his employment with the Village of Romeoville shall be subject to the regulations of this Ordinance regulating political activity.

Section 2: *Improper Political Activity.* Any employee shall be dismissed for improper political activity.
Improper political activity shall be defined as:
1. Becoming a candidate for nomination or election to any elective office of the Village of Romeoville.
2. Soliciting any monetary contribution to the campaign funds of any political organization supporting a candidate for public office of the Village of Romeoville.
3. Making any monetary contribution to the campaign of any candidate for elective office of the Village of Romeoville.
4. Taking an active part in a campaign for elective office of the Village of Romeoville.
5. Acting as a partisan worker at the polls or distributing badges, pamphlets or handbills of any kind favoring or opposing any candidate for election or nomination to an elective office of the Village of Romeoville.
6. Acting as an election judge in any election by the Village Board.
Section 3: This ordinance does not prevent any employee from:
1. Becoming or continuing to be a member of a political club or organization.
2. Attending and participating in a political meeting.
3. Enjoying entire freedom from all interference in casting a vote.
4. Seeking signatures to any initiative petition directly affecting his rate of pay, hours of work, retirement or other working conditions.

5. Distributing badges, pamphlets or handbills or other partic-
ipation in any campaign in connection with such a petition pro-
vided the activity is not carried on during working hours and the
employee is not dressed in a uniform required by any depart-
ment of the Village Government."

On April 17, 1977, a Sunday, Yvonna Redemske, while off duty,
drove an automobile in a parade through the village of Romeoville, which
parade was in support of a candidate for village trustee and of his party in
the upcoming election. Mrs. Redemske at no time has denied taking part
in the parade. She indicated in her testimony that she was familiar with
the ordinance prior to riding in the parade, but she testified that she did
not think such conduct violated the ordinance. She testified that she
would not have participated in the parade had she known she could lose
her job with the village. On April 27, 1977, after a hearing before the
village board, she was dismissed from employment by the village, such
dismissal based upon her violation of section 2, subsection 4 of the
ordinance (above set forth) of the village of Romeoville. Thereafter,
Redemske filed an action in circuit court seeking reinstatement and back
wages for the allegedly improper and illegal dismissal. In pertinent part,
her complaint attacked the constitutionality of the ordinance as being
both vague and overbroad and contrary to the due process clauses of the
Illinois and United States constitutions.

■■ The circuit court, after reviewing the evidence and arguments,
concluded that the General Assembly had not delegated the power to the
village to regulate the political activities of its employees as was provided
by the ordinance in question. The court held the ordinance was
unenforceable, and ordered Mrs. Redemske to be reinstated and given
back pay. In arriving at its decision that the power to regulate political
activity had not been delegated to the village by the General Assembly,
the circuit court apparently relied upon the constitutional provision
declaring, in pertinent part, that municipalities which are not home rule
units shall have only powers granted to them by law by the General
Assembly. (Ill. Const. 1970, art. 7, §7.) The court found no specific
delegation as would permit Romeoville to regulate the political activities
of an employee to the extent of forbidding his participation in a parade.
Accordingly, it struck down the ordinance. The village responds, citing
section 10—4—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch.
24, par. 10—4—1) as authority for its ordinance. Section 10—4—1 states:
"The corporate authorities of any municipality may provide by
ordinance in regard to the relation between all municipal officers
and employees in respect to each other, the municipality, and the
people."

We find that this section provides ample authority for the regulation

by municipalities of the political activity of their employees. Section 10—4—1 is part of the division of the Illinois Municipal Code setting forth "general corporate powers respecting employment." By its terms it gives municipalities the power to provide by ordinance for the relations between it, its employees, and the public. In providing for the relation between it, its employees and the public, the municipality may regulate, within constitutional limits, the political activity of its employees. If that were not the case, then a municipality would be powerless to prevent its employees from engaging in obviously improper and unacceptable political activity and powerless to prevent its employees from being subject to political pressures from superiors. Section 10—4—1 expresses itself in general terms, designed to cover a broad range of relations between municipal employees, the municipality and the public. Adoption of the trial court's reasoning, requiring a specific and express delegation of powers with regard to those relations would render section 10—4—1 meaningless and impotent. We note that neither section 10—4—1 nor any other section of the Code expressly grants to municipalities the power to set working hours, pay schedules, working conditions or other conditions or restrictions on employment. Those powers, however, are implied in section 10—4—1.

The Illinois Municipal Code grants both specific powers and general powers to municipalities. Section 10—4—1 is a grant of general power. Municipal power may come from specifically designated power or it may arise by implication from the grant of general powers. (*Hunt v. City of Peoria* (1964), 30 Ill. 2d 230, 195 N.E.2d 719.) Implied in the section 10—4—1 grant of general powers respecting employment is power to the municipalities to regulate the conduct of their employees for their own benefit and for the benefit of the effective administration of the municipalities' business. Included in such implied powers is the power to regulate certain political activities by municipal employees.

The plaintiff's arguments to the contrary are unpersuasive. We find no basis for concluding that the General Assembly, in enacting section 10—4—1, meant to restrict a municipality's power with respect to political activity of its employees within the confines set forth for State civil service employees. Likewise, that the voters of a municipality can, by referendum, adopt a civil service system for the municipality (Ill. Rev. Stat. 1977, ch. 24, par. 10—1—43) does not logically lead to a conclusion that absent such a decision, the municipality is powerless to regulate the employment conditions of its employees. Nothing in the statute so indicates.

Having noted that the grant of general powers in section 10—4—1 includes the power to regulate political activity on the part of municipal employees, we turn to the ordinance actually adopted by Romeoville, to determine if it is constitutional. Contrary to plaintiff's suggestion, we

cannot avoid the question. It is now established that a government may constitutionally regulate and restrict the political activity of its employees. (*United States Civil Service Com. v. National Association of Letter Carriers* (1973), 413 U.S. 548, 37 L. Ed. 2d 796, 93 S. Ct. 2880; *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908.) In both cases a broad range of restrictions on political activity by governmental employees was sustained in the face of a variety of constitutional attacks. *National Association of Letter Carriers* dealt with section 9(a) of the Hatch Act (5 U.S.C. §7324(a) (1976)), which restricted the political activity of Federal employees, while the *Broadrick* case addressed section 818 of Oklahoma's Merit System of Personnel Administration Act, which restricted the political activity of Oklahoma's classified civil servants. These opinions make it clear that, when properly done, a governmental unit may prevent its employees (1) from soliciting contributions for partisan candidates, parties, or political purposes; (2) from taking part in the management or affairs of any political party's partisan political campaign; (3) from addressing or taking an active part in political rallies or meetings; and (4) from riding in caravans for a political party or partisan political candidate. (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 616-17, 37 L. Ed. 2d 830, 843, 93 S. Ct. 2908, 2918.) Thus, there is no doubt that the village of Romeoville can, by proper ordinance, prevent its employees from engaging in such activities without offending the constitution. The question, then, in the instant case, is not the extent of the municipality's power, but rather whether the ordinance which attempts to restrict its employees' political activities does so within constitutional limits. The plaintiff, Yvonna Redemske, argues that the ordinance as it existed at the time of her dismissal was both vague and overbroad, and that it must be found to be invalid for these infirmities. The village of Romeoville responds, noting that language very similar to that used in its ordinance was at issue, and was upheld, in the *Broadrick* and *National Association of Letter Carriers* cases.

■■ A statute is unconstitutionally vague when men of common intelligence must necessarily guess at its meaning. (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 607, 37 L. Ed. 2d 830, 837, 93 S. Ct. 2908, 2913; *Bart v. Department of Law Enforcement* (1977), 52 Ill. App. 3d 487, 367 N.E.2d 773.) The Supreme Court in *Broadrick* noted:

> "[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." (413 U.S. 601, 608, 37 L. Ed. 2d 830, 837, 93 S. Ct. 2908, 2913-14.)

To put it another way, the ordinary person must be capable of appreciating, from the language of the ordinance or statute, how he will be affected by its operation. This is especially true where the ordinance or statute attempts to restrict or burden the exercise of first amendment rights. (*Broadrick v. Oklahoma* (1973), 413 U.S. 601, 611, 37 L. Ed. 2d 830, 839, 93 S. Ct. 2908, 2915.) The language with which we are dealing in the instant case is "taking an active part in a campaign for elective office of the Village of Romeoville." The village, in its brief, argues that "active part" would *"likely* include any situation where one is exposed to public visibility," such as a parade. (Emphasis added.) The village offers no delineation of what all would likely be included under the term "campaign." The village, at page 19 of its brief, also admits that to the "uninvolved casual observer looking at the language of the ordinance, a question might be raised as to the meaning of 'taking an active part.' " It then goes on to assert that Mrs. Redemske was not a casual observer, but someone who had read the ordinance, although carelessly, prior to deciding whether to ride in the parade. We note that the vagueness standard speaks in terms of the ordinary person exercising ordinary common sense, a person, it would seem, not unlike the village's uninvolved casual observer. We must also note that while Mrs. Redemske was involved with the situation and had read the ordinance, there is nothing to indicate she was aware, or should have been aware, that riding in the parade was specifically covered by the "taking an active part in a campaign" language.

■■ We find, as the village's brief virtually concedes, that the ordinary person exercising ordinary common sense would have to guess at the meaning of subsection 4 of section 2 of the ordinance. We question whether such a person, reading the ordinance in question, would have understood that a ride in a political parade constituted "taking an active part in a campaign." We think it equally likely that such a person could have thought the ordinance directed at actions on the part of employees which involved them more closely in the ongoing activity and management of a political campaign. Simply showing one's support for a candidate, either by displaying a campaign button or by riding in a parade, might reasonably be thought to be outside the prohibition against taking an active part in a campaign. There is nothing in the other five subsections of section 2 which implies or suggests such a broad scope to the language of subsection 4. Additionally, subsection 2 of section 3, allowing employees to attend and participate in political meetings, might be thought to include a rally or parade.

While conceding the imprecision and vagueness in the language used in subsection 4 of section 2, the village relies upon *Broadrick v. Oklahoma* and *National Association of Letter Carriers* in arguing that the

constitutionality of the vague language has been upheld. *National Association of Letter Carriers* dealt with numerous restrictions, among which was a prohibition against taking an active part in managing a political campaign. *Broadrick v. Oklahoma* was also concerned with a catalogue of restrictions, included in which was one against taking part in the management or affairs of any political party or in any political campaign. The village, in its brief, notes the similarity between the language in *Broadrick* and the language in its ordinance, and also recognizes that neither clause is "very specific in describing particular actions." Yet, it concludes, the statute in *Broadrick* was upheld, as was a prohibition against riding in caravans for a political party.

The fatal difficulty with the village's reliance upon the *National Association of Letter Carriers* and *Broadrick* cases is that in both those cases, the Supreme Court relied upon other language, narrowing and specifically construing the broad language of the statutes, in upholding them against vagueness attacks. In *National Association of Letter Carriers*, the statute at issue, while phrased in vague terms, referred to specific and detailed prohibitions in the Civil Service Commission rules. The Supreme Court noted that the commission had developed a body of law with respect to what partisan conduct was forbidden under the statute, and it noted that those rules were sufficiently clear for guidance to employees. (413 U.S. 548, 580, 37 L. Ed. 2d 796, 817, 93 S. Ct. 2880, 2898.) Similarly, in *Broadrick v. Oklahoma*, the Supreme Court upheld broad prescriptive language, similar to that in the ordinance before us, with reference to a body of authoritative interpretations of that language which were to be found in the rules of the State Personnel Board, in an interpretive circular, and in other secondary material. (413 U.S. 601, 617, 37 L. Ed. 2d 830, 843, 93 S. Ct. 2908, 2918-19.) The court also notes that the State Personnel Board was available to rule, in advance, on the permissibility of particular conduct under the explicit standards set out in and under the statutory provision. (413 U.S. 601, 608 n.7, 37 L. Ed. 2d 830, 837 n.7, 93 S. Ct. 2908, 2914 n.7.) It must be noted that the prohibition against riding in a political caravan, one the village emphasizes, was a specific restriction found in the secondary materials construing the otherwise broad language of the statute.

In the instant case, there has been no showing that the broad language of the ordinance, in subsection 4, has received any narrowing construction or specific interpretation to aid employees in understanding its application and limits. So far as the record indicates, there is no body of law, interpretive circular, or other supplementary documentation serving to narrow and make specific the general prohibition against "taking an active part in a political campaign." Nor, so far as the record shows, is there any procedure whereby employees with questions about

their conduct and the ordinance can receive answers to their questions. In light of these distinguishing facts, *Broadrick* and *National Association of Letter Carriers* do not establish the constitutionality of Romeoville's prohibition against "taking an active part in a political campaign." Rather, they serve to point up the constitutional deficiency of subsection 4.

The village asserts that had Yvonna Redemske "wanted an authoritative opinion as to whether she could have participated in the parade in question, the authority of the Supreme Court in *Broadrick* would have left little question that her conduct could be validly prohibited." Although Mrs. Redemske could have been discharged without cause, she would not be rightfully dismissed from her job for her ignorance of the Supreme Court's decision in *Broadrick*, nor, fortunately, for her failure to contact a lawyer prior to her participation in the political parade. The burden was upon the village of Romeoville in this case to adopt an ordinance which clearly and specifically apprised its employees of which political activities on their part would be grounds for dismissal. This they failed to do in subsection 4, section 2, of chapter 1, article 16 of their ordinances. The language adopted therein was too broad and vague for ordinary people of common sense to understand which activities were prohibited. Consequently, subsection 4 is void for vagueness and the trial court's conclusion that it was unenforceable against Mrs. Redemske was correct.

The final issue concerns the damage award for back pay, being $6,123.97. The trial court arrived at this figure by first computing the amount of money Mrs. Redemske would have earned with the village had she not been wrongfully discharged, and then it subtracted from that figure the amount she earned while working elsewhere after her discharge. The difference between the two amounts formed the basis for the court's award of back pay, $6,123.97. The village argues that since plaintiff was a non-civil-service employee, employed at will, she was not entitled to back pay, but only to nominal damages. That she could have been discharged without reason given on the day of her wrongful discharge does not lessen the propriety of the damages awarded by the court by reason of the fact that she was wrongfully discharged on the basis specified.

As an employee at will, Mrs. Redemske could have been discharged at any time without cause. It is likewise true that such an employee ordinarily has no right to damages other than nominal damages, as a result of a dismissal.

The trial court, in the instant case, however, found that by reason of the wrongful discharge, Mrs. Redemske was entitled to the damages as heretofore specified. The record disclosed that she had been employed by the village since 1966 and that there was no indication that she would

have left her job or that the village would have discharged her had the parade incident and subsequent improper discharge not occurred. The appellant argues, and the trial court was apparently motivated by, considerations such as those referred to in *Barango v. Hedstrom Coal Co.* (1956), 12 Ill. App. 2d 118, 138-39, 138 N.E.2d 829. In the *Barango* case, the court stated, at page 139:

> "'Yet it is the aim of the law to attain at least a "rough correspondence between the amount awarded as damages and the extent of the suffering," [Restatement of Torts §903, comment a] or other intangible loss * * *.'"

The *Barango* court was concerned with personal injuries, but the same principle is applicable where a wrongful discharge is caused by another. ▪▪ The damage award, at first glance, appears somewhat anomalous when consideration is given to the fact that Mrs. Redemske could have been discharged on the same day at the same time, without cause. Yet, in this case, she was not discharged without cause, but she was improperly discharged expressly for exerting her constitutionally protected rights of expression and association. While those rights may be limited, to the extent attempted in this case, the limitation itself must result in a constitutional ordinance. In this case we have determined that the ordinance, attempting to limit those rights, was unconstitutionally vague. Under the facts in the instant case, therefore, as reflected by the record, which shows that the village specifically relied on the contention that she had violated a valid ordinance, and in view of our finding that the discharge was improper, Mrs. Redemske was entitled to reinstatement and compensation for loss of earnings resulting from the improper discharge. The rationale adopted by the trial court in determining her monetary damages is not inconsistent with the rights of the parties in the instant case, in view of the posture of the case as presented in the trial court. When reinstated, Mrs. Redemske's position will be the same as it was when she was discharged, that is, as an employee at will.

For the reasons stated, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. JUSTICE BARRY, specially concurring:

I specially concur in the result of the majority opinion but do so for reasons other than those expressed by my colleagues. I believe the trial court correctly found that the questioned ordinance of the village of Romeoville was beyond the authority delegated to it by the General

Assembly. I acknowledge the established principle of statutory construction, that a municipal ordinance should, as far as possible, be given a construction which renders it valid rather than void. Here the normal presumption of the validity of the ordinance has been overcome.

After reviewing the evidence and the arguments, I agree with the trial court that the General Assembly has not delegated the power to the village to regulate the political activities of its employees as the questioned ordinance attempted to do. The powers of a village are divided into two categories, those that are expressly granted and those that are implied. The village possesses and may only exercise those powers expressly granted by the General Assembly and those additional powers necessarily implied in or incident to those expressly granted powers. *City of Bloomington v. Wirrick* (1942), 381 Ill. 347, 45 N.E.2d 852; *Village of Cherry Valley v. Schuelke* (1977), 46 Ill. App. 3d 91, 360 N.E.2d 158; Ill. Const. 1970, art. 7, §7.

The village argues, and the majority opinion wrongly concludes, that section 10—4—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—4—1) is a delegation by the General Assembly of the power to regulate all the political activities of its employees. Section 10—4—1 states: "The corporate authorities of any municipality may provide by ordinance in regard to the relation between all municipal officers and employees in respect to each other, the municipality, and the people."

The language of the above-quoted statute is a very broad delegation of power to the village to regulate and direct its day-to-day operations with regard to employees and officers as they affect the village. Although the power therein is expressly delegated, it does not specifically authorize for the village to thereby regulate the political activities of its employees. The power to so act, if it exists at all, must then necessarily be implied from the general powers set forth in section 10—4—1 of the Illinois Municipal Code. The legislature has not seen fit to specifically delegate the power to so regulate employee conduct, as has been attempted here, to the village.

The language of section 10—4—1 itself does not authorize any additional implied powers to the village as the necessary and proper clause of the United States Constitution (U.S. Const., art. I, §8) does to Congress. I do not believe the Illinois General Assembly intended that their general delegation of power in this section of the Municipal Code should be broadened to include a multitude of unnecessarily far reaching additional implied powers.

I particularly do not believe the General Assembly intended by section 10—4—1 to authorize villages to enact law limiting the political activities of their employees *after working hours*. In support of this contention is the analogous situation of the cities civil service act (Ill. Rev.

Stat. 1977, ch. 24, par. 10—1—1), and section 2 of "An Act to define and regulate political activity by merit employees of the State * * *" (Ill. Rev. Stat. 1977, ch. 24½, par. 38t). The General Assembly provided for the village of Romeoville to establish civil service only through a referendum procedure with the approval by a vote of the electors being necessary to adopt it. Within the cities civil service act the General Assembly has specified the types of political control over village employees that the village may exert. (Ill. Rev. Stat. 1977, ch. 24, pars. 10—1—26 through 10—1—34 inclusive.) The ordinance adopted by the village of Romeoville is even more stringent than the cities civil service act and "An Act to define and regulate political activity by merit employees of the State * * *" in that it purports to regulate after-work activities of village employees. I do not believe that the General Assembly by a grant of implied power in section 10—4—1 intended for the village to be able to circumvent the referendum procedure required to adopt a civil service system and allow the village to more stringently regulate the political activities of its employees than the State itself has authorized by separate, more specialized legislation. See Ill. Rev. Stat. 1977, ch. 24½, par. 38t.

The majority suggests that restricting the powers of a village to deal with its employees pursuant to section 10—4—1, as I propose, would be too narrow an interpretation and would leave the municipality without the power to regulate abusive and improper political conduct by its employees. I do not believe such a narrow interpretation renders section 10—4—1 "meaningless or impotent." To the contrary, I do not interpret that section so narrowly as to deprive the village of all the implied power to deal with its employees on a day-to-day basis in the labor market of today. However, the General Assembly has provided an alternative mode for such regulation of political and activities otherwise of municipal employees in the cities civil service act. That act should be utilized, for it is a specific grant of power to the village to enact such regulations. I cannot acquiesce in the strained construction of section 10—4—1 of the Illinois Municipal Code utilized by the majority opinion to affirm the judgment of the trial court.

For the reasons stated I believe the judgment appealed from was proper and should be affirmed.