**Michael P. ARDEN, et al., Plaintiffs,**

v.

**VILLAGE OF OAK LAWN, et al., Defendants.**

**No. 81 C 3943.**

United States District Court, N. D. Illinois, E. D.

March 24, 1982.

---

Burton S. Odelson, Odelson & Associates, Evergreen Park, Ill., for plaintiffs.

Sarah A. Hansen, Klein, ·Thorpe & Jenkins, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Four police officers employed by the Village of Oak Lawn ("Oak Lawn"), joined as plaintiffs by the Oak Lawn chapter of Combined Counties Police Association, Inc. ("CCPA"),[1] bring this class action[2] against Oak Lawn, its President and Board of Trustees and its Chief of Police. Plaintiffs seek declaratory and injunctive relief against an Oak Lawn ordinance as an unconstitutional abridgement of the First Amendment right of Oak Lawn employees to engage in political activities. Defendants have moved to dismiss the Complaint under Fed.R.Civ.P. ("Rule") 12(b)(6) for failure to state a cause of action. Their motion is denied.

On June 9, 1981 Oak Lawn's Board of Trustees passed an ordinance (the "Ordinance") sharply restricting the political activities of municipal employees:

*Sec. 2–59. Prohibited Activities*

Village employees, including policemen and firemen, are prohibited from engaging in the following activities connected with elections for Village offices or propositions:

---

1. CCPA is the union representing 95% of Oak Lawn's police personnel.

2. Though the Complaint is self-characterized as a "class action" (both in the "Nature of Action" paragraph and in Paragraph 3(c)), it does not contain the appropriate Fed.R.Civ.P. ("Rule") 23 allegations, nor have plaintiffs moved for class certification. This opinion does not deal with possible deficiencies in that respect, which cannot be cured (as plaintiffs seek to do) by a memorandum of law rather than a pleading.

1. from soliciting contributions for candidates, parties or political purposes;

2. from taking part in the management or affairs of any political party's or candidate's political campaign;

3. from addressing or taking an active part in political rallies or meetings; and

4. from riding in caravans for a political party or political candidate.

Defendants' motion to dismiss poses the questions whether, accepting the Complaint's allegations and all reasonable inferences in plaintiffs' favor, the Ordinance cannot be viewed as vague or overbroad in violation of plaintiffs' First Amendment rights.

■ For most people in our democracy political activity lies close to the heart of the First Amendment and is hence—via the Fourteenth Amendment—protected from state infringement.[3] Nonetheless it is well-settled that government employees are something less than first-class citizens in that respect, for the First Amendment does not forbid restrictions on their partisan political conduct. *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Less than a decade ago the Supreme Court, in *United States Civil Service Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) and *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), "unhesitatingly" (413 U.S. at 556, 93 S.Ct. at 2886) reaffirmed the vitality of *United Public Workers.*[4]

■ But plaintiffs urge persuasively that the Ordinance, which is not limited to partisan elections, casts too wide a net. Throughout *Letter Carriers* and *Broadrick*, as in *United Public Workers*, the Court spoke of *partisan* political activity. *Letter Carriers*, 413 U.S. at 556, 93 S.Ct. at 2886; *Broadrick*, 413 U.S. at 616–18, 93 S.Ct. at 2918–19; *United Public Workers*, 330 U.S. at 99–101, 67 S.Ct. at 569–70. Party politics provided the rational underpinning for inhibiting First Amendment activity in each decision. *See also Magill v. Lynch*, 560 F.2d 22, 29 (1st Cir. 1977) ("... the government may constitutionally restrict its employees' participation in nominally nonpartisan elections if political parties play a large role in the campaigns.").

By necessary implication a municipality may *not* constitutionally prevent its employees from participating in *nonpartisan* political elections. Because the Ordinance plainly includes such nonpartisan elections within its ban, it runs afoul of the First Amendment.[5]

■ On defendants' motion to dismiss, all well-pleaded allegations of the Complaint must be taken as true. Plaintiffs allege in part that:

(1) "[They] have in the past participated in various political campaigns and rallies and taken part in the affairs of various non-partisan candidate's [sic] campaigns, as well as soliciting contributions for said non-partisan candidates." Complaint ¶ 4.

(2) On information and belief, "all candidates running for local political office

---

3. In the interest of simplicity (and consistent with customary usage) this opinion will throughout refer to the First Amendment as the source of plaintiffs' rights, without further reference (albeit more accurate) to the Fourteenth.

4. Were this Court writing on a clean slate, it would draw the line between activity protected and unprotected by the First Amendment in a location different from that expressed in *Letter Carriers* and *Broadrick*. Such is not however the function of a district court. This opinion will of course apply those precedents with full vigor.

5. This Court therefore need not address plaintiffs' alternative contention that the Ordinance is so vague that "men of common intelligence must necessarily guess at its meaning" (*Broadrick*, 413 U.S. at 607, 93 S.Ct. at 2913) and is thus "void for vagueness" under well established principles. *See generally Village of Hoffman Estates v. Flipside*, —— U.S. ——, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

in the Village have run as non-partisans." Complaint ¶ 12.

(3) "[A]s a result of the passage of the Ordinance, all solicitations, contributions and participation in local community events and affairs which might be considered political have ceased; thus creating a chilling effect on the rights of the Plaintiffs as complained of herein." Complaint ¶ 16.

Those allegations alone (and there are more) suffice to defeat defendants' motion. Plaintiffs' Complaint paints the impermissible portrait of municipal employees barred, on pain of dismissal, from engaging in wholly nonpartisan political activity.

■ Defendants seek to rebut plaintiffs' case via the affidavit of Oak Lawn's counsel, Patrick A. Lucansky.[6] Lucansky says the April 1981 Oak Lawn municipal election was a "partisan election, participated in by Oak Lawn First Party, the Mayors' Coalition Party, and several independent candidates." Similar statements are made as to the 1979 and 1977 municipal elections.

■ Even taken at face value Lucansky's affidavit does not meet the Complaint head-on. Lucansky himself refers to "several independent candidates" in each of the three elections. It is just such "non-partisan candidates" in whose campaigns plaintiffs take part and for whom plaintiffs solicit contributions (Complaint ¶ 4). That

constitutionally protected conduct is stifled by the Ordinance, which is thus overbroad and unconstitutional.[7]

Moreover, even the main thrust of Lucansky's affidavit—his conclusory (and not really testimonial) statement that each "Oak Lawn municipal election . . . was a partisan election"—is suspect. It is hardly clear that the participation of village political "parties" in local elections[8] makes such elections "partisan" for First Amendment purposes. *Letter Carriers* identified several major governmental interests served by a ban on public employees' involvement in partisan elections:

(1) serving the public's interest in an efficient government, faithful to the legislature rather than party (413 U.S. at 564–65, 93 S.Ct. at 2889–90);

(2) avoiding the development of a powerful political machine (id. at 565–66, 93 S.Ct. at 2890);

(3) ensuring that public employees achieve advancement on their merits and that they be free of coercion and the prospect of favor from political activity (id. at 566–67, 93 S.Ct. at 2890–91).

*See also Magill,* 560 F.2d at 27–29.

Those policy considerations were held to outweigh, in the balancing process, the employees' First Amendment assertions. But their very articulation shows them relevant where "partisan" means national—or at

---

**6.** By submitting the Lucansky affidavit and other material outside the pleadings, defendants effectively transform their motion to dismiss into a Rule 56 summary judgment motion. Under Rule 12(c) plaintiffs would then be entitled to a "reasonable opportunity" to present their own materials in opposition. But because the Lucansky affidavit does not—even if left unrebutted—establish facts entitling defendants to judgment as a matter of law, it has been unnecessary to accord plaintiffs that opportunity.

**7.** Defendants' memoranda persist in treating the Ordinance as though it spoke only of "elections," and "partisan elections" at that. In fact it not only lacks any reference to "partisan" activity but also applies to much more than elections: to "propositions," "candidates," "political purposes," "political rallies or meetings."

**8.** Oak Lawn apparently follows the common practice of smaller Illinois communities, usual-

ly adopted to avoid some of the strictures of the Illinois election laws, of forming one-shot "parties" for each municipal election. Thus Lucansky identifies the "Citizens' Coalition Party" and the "Homeowners Party" in 1977 and the "Oak Lawn First Party" and "Mayors' Coalition Party" in 1981. In some communities such homegrown parties have subsurface political affiliations, *see Tomei v. Finley,* 512 F.Supp. 695, 696 (N.D.Ill.1981). But in virtually all with which this Court is familiar (including Glencoe, where this Court served as a village trustee selected through the wholly nonpartisan caucus system) the so-called "parties" are entirely apolitical. They represent the obverse side of the *Magill* coin, with "nominally political parties" but actually nonpartisan candidates and elections. There is nothing in the record to indicate the nature of the Oak Lawn "parties" in this respect.

least regional or statewide—political parties. Only such large-scale mass organizations would normally have the money, influence and patronage to develop "powerful political machines" and consequently pose real threats to the public interest in responsive government and the employee's interest in freedom from coercion.

This is not to say that small, village-based political parties could never present the kinds of threats identified in *Letter Carriers*. But that bare possibility can scarcely support a motion to dismiss (as contrasted with elections involving the Democratic and Republican parties, where a court can effectively take judicial notice that "partisan" indeed *means* partisan). Even were the Ordinance limited (as it is not) to partisan elections, the question of "partisan" *vel non* is wholly factual in the present context. Binding inferences cannot be drawn from the labels groups of individuals seek to give themselves, or those that others seek to pin on them.

All this however has in a sense been a digression. After all, the major fatal flaw in the Ordinance is its wide-ranging applicability to clearly nonpartisan activity entitled to the broadest First Amendment protection, both in freedom of association and freedom of speech terms. It prohibits engaging in "activities" connected with "elections"—not "partisan" elections but *all* elections in Oak Lawn. Its ban specifically extends to referenda ("propositions") and other sorts of elections where no permanent political organization—national or village-based, large or small—is involved. It bars contributions for *all* "political purposes" and taking an active part in *all* "political rallies or meetings."

Nor will this Court rewrite the Ordinance under the guise of "interpretation" by in-

serting "partisan" where Oak Lawn has not.[9] In that respect defendants palter with the Court. Their Br. 5 says the Ordinance's provisions "were lifted virtually verbatim" from the language approved by the Illinois Appellate Court in *Redemske v. Village of Romeoville*, 85 Ill.App.3d 286, 291, 40 Ill.Dec. 596, 600, 406 N.E.2d 602, 606 (3d Dist. 1980).[10]

■ That statement is simply false, and false in a way that cuts directly against defendants' position. All the *Redemske* language (and the language from *Broadrick*, 413 U.S. at 616–17, 93 S.Ct. at 2918, on which *Redemske* relied for its conclusion) emphasized that *partisan* activities were being prohibited under the ordinance or statute involved. As *Redemske* put it, 85 Ill.App.3d at 291, 40 Ill.Dec. at 600, 406 N.E.2d at 606:

> These opinions make it clear that, when properly done, a governmental unit may prevent its employees (1) from soliciting contributions for partisan candidates, parties, or political purposes; (2) from taking part in the management or affairs of any political party's partisan political campaign; (3) from addressing or taking an active part in political rallies or meetings; and (4) from riding in caravans for a political party or partisan political candidate.

Laying *Redemske* alongside the Ordinance demonstrates that Oak Lawn calculatedly excised the word "partisan" wherever it appeared. This Court will not engage in reconstructive surgery to save Oak Lawn's deliberate chilling of First Amendment protected activity.

One last point is worth making on the subject of chilling. In direct contrast to *Letter Carriers* and *Broadrick*, Oak Lawn has promulgated no regulations giving em-

9. Under different circumstances courts have sometimes thus avoided the constitutional overbreadth analysis. *See Elder v. Rampton*, 413 U.S. 902, 93 S.Ct. 3062, 37 L.Ed.2d 1020 (1973), *aff'g* 360 F.Supp. 559 (D.Utah 1972) (three-judge court) (statute proscribing "political" activity could be construed to ban only partisan activity). It should be emphasized that such a reading—which would be a wholly

inappropriate tour de force here—would not necessarily save the Ordinance, for reasons already discussed.

10. 'Were defendants accurate in that statement, *Redemske* would still be no more than a useful aid to this Court's decision. State court decisions interpreting federal constitutional law are not of course binding on the federal courts.

ployees notice of the kinds of particular political activity prevented under the Ordinance.[11] Nor does the Ordinance provide any mechanism for advance rulings as to whether particular conduct is proscribed.[12] Instead the employee interested in governmental affairs must risk discharge each time Oak Lawn decides to press hard against the outer limits of the Ordinance.

That prospect is a classic example of the "chilling effect." Because concern as to "chilling" is so central to First Amendment values (see *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972), the Ordinance would not necessarily be saved solely by reinsertion of the word "partisan" where Oak Lawn has deleted it.[13]

### Conclusion

For the reasons stated in this memorandum opinion and order, Oak Lawn's motion to dismiss is denied.

11. Complaint ¶ 21 alleges that there are neither hearing procedures nor guidelines to apprise employees what political activities would be grounds for dismissal.

12. This Court of course expresses no opinion on the validity of any particular advance ruling system, a question not now presented. Some implementations of such a concept might well call into play the case law invalidating prior restraints on the exercise of First Amendment rights.

13. This discussion has not intended to cross over into the impermissible territory of the advisory opinion, though the nature of the parties' arguments invites some analysis of that type. Certainly the Ordinance as drafted cannot survive the overbreadth analysis most recently exemplified in *Hoffman Estates*, —— U.S. at ——, 102 S.Ct. at 1189–1193. Whether Oak Lawn can do better if it elects to go back to the drawing boards remains for the future.